**Jerry GOETZ d/b/a Jerry Goetz and Sons, individually and on behalf of all others similarly situated, Plaintiff,**

v.

**Dan GLICKMAN, Secretary, United States Department of Agriculture, Defendant.**

Civil Action No. 94–1299–FGT.

United States District Court, D. Kansas.

Feb. 28, 1996.

Federal Courts of the New York State Bar Association, *Service of Process Abroad: A Nuts and*

*Bolts Guide,* 122 F.R.D. 63, 73 (1989).

Clarence L. King, Jr., David Klaassen, Brian Wilson Wood, Hampton, Royce, Engleman & Nelson, Salina, KS, for Jerry Goetz.

Stephen K. Lester, Randall K. Rathbun, Office of United States Attorney, Wichita, KS, Thomas W. Millet, Frank W. Hunger, U.S. Department of Justice, Civil Division, Washington, DC, Felicia L. Chambers, U.S. Department of Justice, Washington, DC, for U.S. by and on behalf of its agency, U.S. Dept. of Agriculture, Secretary of Agriculture, Dan Glickman.

Brian E. Gardner, Morrison & Hecker, L.L.P., Kansas City, MO, for National Pork Producers and National Pork Producers Council amicus.

James A. Walker, Rachael K. Pirner, Triplett, Woolf & Garretson, Wichita, KS, James D. Keast, Carmody, MacDonald, Hilton, Wolf & Keast, P.C., St. Louis, MO, for American Soybean Ass'n amicus.

James A. Riedy, McDermott, Will & Emery, McDermott, Will & Emery, Washington, DC, for National Potato Council amicus.

Dennis L. Gillen, Depew and Gillen, L.L.C., Wichita, KS, John G. Roberts, Jr., Hogan & Hartson, L.L.P., Washington, DC, Richard T. Rossier, Marc E. Miller, McLeod, Watkinson & Miller, Washington, DC, for Willie Reibel, Rodney Mense, Larry Mense, Jan Lyons, Kansas Livestock Association, National Cattlemen's Association and National Live Stock and Meat Board.

### MEMORANDUM AND ORDER

THEIS, District Judge.

The plaintiff Jerry Goetz d/b/a Jerry Goetz and Sons (hereinafter Goetz or plaintiff) brought this action challenging the constitutionality of the Beef Promotion and Research Act of 1985, 7 U.S.C. § 2901 et seq. The plaintiff seeks to represent a class of all persons subject to the requirements of the Beef Promotion and Research Act of 1985, including all persons who have been required to pay the assessment of one dollar per head of cattle sold, as required by the Act. Also appearing in this case are intervenors Willie Reibel, Rodney Mense, Larry Mense, Jan Lyons, who are Kansas cattle ranchers, and Kansas Livestock Association, National Cattlemen's Association, and National Live Stock and Meat Board, three nonprofit beef industry groups.

Presently pending before the court are: (1) the defendant Secretary of Agriculture's motion to dismiss, Doc. 29, (2) the defendant's motion to dismiss the first amended complaint, Doc. 112, (3) plaintiff's motion for summary judgment, Doc. 73, (4) plaintiff's motion for summary judgment on the first amended complaint, Doc. 118, (5) intervenors' motion to dismiss the complaint, Doc. 101, (6) intervenors' motion to dismiss the first amended complaint, Doc. 110, and (7) plaintiff's renewed motion for summary judgment, Doc. 131. The court has considered the briefs, heard oral argument on these matters, and is prepared to rule. For the reasons discussed in this opinion, the defendant's and intervenors' motions to dismiss shall be granted.

Other pending motions which were not argued at the hearing include: (1) plaintiff's motion for class certification, Doc. 22, and (2) defendant's motion for reconsideration of preliminary injunction orders, Doc. 32. Given the court's resolution of the motions to dismiss and for summary judgment, the remaining motions do not need to be addressed.

The Beef Promotion Act directs the Secretary of Agriculture to promulgate a Beef Promotion and Research Order ("the Order"), that provides for financing beef promotion and research through assessments on cattle sold in the United States and cattle, beef, and beef products imported into the United States. 7 U.S.C. § 2901(b), 2903, 2904(8)(A)–(C). The Order established by the Secretary (7 C.F.R. Part 1260, Subpart A) established the Cattlemen's Beef Promotion and Research Board ("the Cattlemen's Beef Board") and the Beef Promotion Operating Committee ("the Operating Committee"). 7 U.S.C. § 2904(1)–(7); 7 C.F.R. 1260.141, 1260.161. The Cattlemen's Beef Board is made of cattle producers and importers appointed by the Secretary. 7 U.S.C. § 2904(1); 7 C.F.R. 1260.141. The Board's principal duties are to administer the Order, make rules and regulations to effectuate the terms and provisions of the Order, elect members of the Board to serve on the Operating Committee, to approve or disapprove the budgets submitted by the Operating Committee, to receive, investigate and report to the Secretary complaints of violations of the Order, and the recommend to the Secretary amendments to the Order. 7 U.S.C. § 2904(2)(A)–(F).

The Operating Committee is composed of ten members of the Cattlemen's Beef Board and ten members elected by a federation of State beef councils. 7 U.S.C. § 2904(4)(A); 7 C.F.R. 1260.161. The Operating Committee develops and submits to the Secretary for approval promotion, advertising, research, consumer information and industry information plans and projects. 7 U.S.C. § 2904(4)(B); 7 C.F.R. 1260.168. The Act prohibits the use of funds for political purposes. 7 U.S.C. § 2904(10).

The Act requires cattle producers in the United States to pay a one dollar per head assessment on cattle sold in this country. 7 U.S.C. § 2904(8)(A) & (C); 7 C.F.R. 1260.172(a)(1), 1260.310. Each person making payment to a cattle producers for cattle is a "collecting person" who is required to collect the assessments and remit them to a qualified State beef council in the State in which the collecting person resides, or, if there is no qualified State beef council, to the Cattlemen's Beef Board. 7 U.S.C. § 2904(8)(A); 7 C.F.R. 1260.311(a), 1260.312(c). Each collecting person must report to the Board certain information for

each calendar month at the time the assessments are remitted and must maintain and make available for the Secretary's inspection the records necessary to verify the reports. 7 U.S.C. § 2904(11); 7 C.F.R. 1260.201, 1260.312(a)–(c), 1260.202.

The Secretary is authorized to conduct investigations and to issue subpoenas to determine if there has been a violation of the Act, the Order, or the rules and regulations thereunder. 7 U.S.C. § 2909. After an administrative hearing, the Secretary may issue an order restraining violations and may impose a civil penalty of up to $5,000 for each violation of the Act and the Order. *Id.* § 2908(a). In addition, the Secretary may request the Attorney General to initiate a civil action to enforce, and to restrain a person from violating, any order or regulation under the Act. *Id.* § 2908(b), (c).

Within 22 months of the issuance of the Order, the Act required the Secretary to conduct a referendum among those persons who were producers and importers during that trial period. The Order would continue to operate only upon approval by a majority of those participating in the referendum. 7 U.S.C. § 2906(a). Prior to the referendum, a cattle producer who paid the assessment could demand a one-time refund. *Id.* § 2907; 7 C.F.R. 1260.173, 1260.174. On May 10, 1988, the referendum was conducted and the Order was approved.[1]

Plaintiff is a "producer" within the meaning of the Act. 7 U.S.C. § 2902(12). As a producer, plaintiff is subject to the one dollar per head assessment upon the sale of cattle. Plaintiff alleges that at times he makes payments to other producers for cattle purchased from such producers, and thus he is a "collecting person" under the Act. *Id.* § 2904(8)(A). As a collecting person, plaintiff is subject to the collecting provisions of the Act and accompanying regulations.

On or about October 29, 1993, the Secretary commenced an administrative proceeding to enforce the provisions of the Act against plaintiff. The Administrative Judge

scheduled a hearing for August 8, 1994. On August 2, 1994, simultaneously with filing his civil action, the plaintiff filed a motion for a temporary restraining order to enjoin the Secretary from proceeding with the administrative hearing. The court entered a temporary restraining order which expired on August 15, 1994. On August 19, 1994, the parties agreed, with the court's approval, to stay the administrative proceedings until October 1, 1994. As a part of this agreement, plaintiff consented to providing all pertinent records to an accounting firm that was conducting an audit on defendant's behalf. The stay of administrative proceedings has since been continued by the court over the defendant's objection.

Plaintiff alleges that he has no desire to associate with the Secretary, the Cattlemen's Beef Board, the Operating Committee, or any State beef council in any matters related to the Beef Promotion Act. Plaintiff further asserts that he has no desire to participate in or financially support any advertising campaign or promotional endeavor undertaken by any of these persons or entities. In his complaint, plaintiff prayed for a temporary restraining order and preliminary injunction staying the administrative proceedings brought by the Secretary against him. The other counts pleaded in the amended complaint assert that the Act is unconstitutional under the following theories: lack of constitutional authority under commerce clause and taxing powers, and unconstitutional delegation of legislative authority; violation of equal protection rights; taking for a non-public use without just compensation; violation of right to free association; violation of right to free speech; violation of right of freedom of belief and freedom of conscience. Plaintiff seeks a ruling that the Act is unconstitutional, an injunction against enforcement, and a refund of any unspent monies.

The defendant argues that the Act does not violate any of plaintiff's constitutional rights. The defendant relies primarily on *United States v. Frame*, 885 F.2d 1119 (3d

---

1. The statute authorizes the Secretary to conduct an additional referendum on the request of 10% or more of cattle producers to determine whether cattle producers favor the termination of the

Order. 7 U.S.C. § 2906(b). According to the statements made at oral argument, that option, while still available, has never been exercised.

Cir.1989), *cert. denied,* 493 U.S. 1094, 110 S.Ct. 1168, 107 L.Ed.2d 1070 (1990), in which the Third Circuit rejected a virtually identical challenge to the Act. This court finds the *Frame* decision persuasive and will follow it, as discussed below.

### I. Commerce Powers

The plaintiff concedes that Congress purported to rely on its commerce powers in enacting the Beef Promotion Act. Plaintiff argues that the activity being regulated does not substantially affect interstate commerce. Plaintiff further argues that the Beef Promotion Act is not regulatory because Congress does not have the power to "stimulate and promote" commerce. Plaintiff asserts that the power granted to Congress to regulate commerce is limited to (1) leaving the activity alone; (2) restricting the activity; or (3) prohibiting the activity.

Plaintiff next argues that there is no rational connection between the regulatory means selected and the asserted ends. Other commodity groups have sought and received similar assistance from the government. The government has set up a pork promotion and research board (*see* Pork Promotion, Research, and Consumer Information Act of 1985, 7 U.S.C. § 4801 et seq.) which performs similar functions and funds comparable advertisements. Plaintiff argues that pork is the primary competitor of beef in the marketplace. Plaintiff asserts that it is not reasonable for the Secretary to engage in such conflicting programs.

■ There are three broad categories of activity that Congress may regulate under its commerce power: (1) the use of the channels of interstate commerce; (2) the protection of the instrumentalities of interstate commerce or persons or things in interstate commerce; and (3) the regulation of those activities having a substantial relation to interstate commerce (those activities that substantially affect interstate commerce). *United States v. Lopez,* — U.S. —, — – —, 115 S.Ct. 1624, 1629–30, 131 L.Ed.2d 626 (1995). While the defendant argues that the Act may be upheld under both the second and third categories noted above, this court intends to focus solely on the third category.

■ An act of Congress which adjusts the burdens and benefits of economic life comes to the court with a presumption of constitutionality. *Hodel v. Indiana,* 452 U.S. 314, 323, 101 S.Ct. 2376, 2382–83, 69 L.Ed.2d 40 (1981). A court may invalidate a statute enacted under the commerce clause only if it is clear that there is no rational basis for a congressional finding that the regulated activity affects interstate commerce; or that there is no reasonable connection between the regulatory means selected and the asserted ends. *Id.* at 323–24, 101 S.Ct. at 2382–83.

When asked to determine whether a particular exercise of congressional power is valid under the commerce clause, the court's task is narrow. The court must defer to a congressional finding that the regulated activity affects interstate commerce if there is any rational basis for such a finding. Once this is established, the only remaining inquiry is whether the means chosen by Congress are reasonably adapted to the end permitted by the constitution. *Hodel v. Virginia Surface Mining & Reclamation Ass'n,* 452 U.S. 264, 276, 101 S.Ct. 2352, 2360, 69 L.Ed.2d 1 (1981); *Preseault v. Interstate Commerce Commission,* 494 U.S. 1, 17, 110 S.Ct. 914, 924–25, 108 L.Ed.2d 1 (1990).

When Congress passed the Beef Promotion Act, it made the following findings:

(1) beef and beef products are basic foods that are a valuable part of human diet;

(2) the production of beef and beef products plays a significant role in the Nation's economy, beef and beef products are produced by thousands of beef producers and processed by numerous processing entities, and beef and beef products are consumed by millions of people throughout the United States and foreign countries;

(3) beef and beef products should be readily available and marketed efficiently to ensure that the people of the United States receive adequate nourishment;

(4) the maintenance and expansion of existing markets for beef and beef products are vital to the welfare of beef producers and those concerned with marketing, us-

ing, and producing beef products, as well as to the general economy of the Nation; (5) there exist established State and national organizations conducting beef promotion, research, and consumer education programs that are invaluable to the efforts of promoting the consumption of beef and beef products; and

(6) beef and beef products move in interstate and foreign commerce, and beef and beef products that do not move in such channels of commerce directly burden or affect interstate commerce of beef and beef products.

7 U.S.C. § 2901(a).

Congress declared the following purpose and objectives in the Beef Promotion Act:

It, therefore, is declared to be the policy of Congress that it is in the public interest to authorize the establishment, through the exercise of the powers provided herein, of an orderly procedure for financing (through assessments on all cattle sold in the United States and on cattle, beef, and beef products imported into the United States) and carrying out a coordinated program of promotion and research designed to strengthen the beef industry's position in the marketplace and to maintain and expand domestic and foreign markets and uses for beef and beef products. Nothing in this Act shall be construed to limit the right of individual producers to raise cattle.

7 U.S.C. § 2901(b).

 Plaintiff argues that Congress was intending to regulate advertising in the Act. Plaintiff ignores the language of the statute, which provided that the purpose of the Act was to strengthen the beef industry, not to regulate the advertising industry. The objectives contained in the Act are valid. The stimulation of trade in a particular industry is a proper regulatory activity. It was a legitimate goal for Congress to seek to strengthen the beef industry.

Plaintiff ignores reality by taking the position that the production of beef does not substantially affect interstate commerce. Plaintiff ignores the fact that beef and beef products move in interstate commerce. It

should be beyond dispute that beef moves in and substantially affects interstate commerce, thus making the beef industry a proper object of legislation under the commerce clause. Congress had a rational basis for finding that the beef industry substantially affects interstate commerce.

This court rejects the plaintiff's argument that the commerce power is limited to restricting or prohibiting an activity. As the Third Circuit noted in *United States v. Frame*, 885 F.2d at 1126, "it is now indisputable that the power to regulate interstate commerce includes the power to promote interstate commerce." The Beef Promotion Act regulates interstate commerce in beef through the imposition of a monetary assessment. The collected assessments are spent on beef promotion and advertising. Advertising stimulates consumer demand for the product being promoted. *Posadas de Puerto Rico Associates v. Tourism Co.*, 478 U.S. 328, 343, 106 S.Ct. 2968, 2977–78, 92 L.Ed.2d 266 (1986). The promotion of beef represents a valid exercise of Congress' broad power to stimulate commerce. *United States v. Frame*, 885 F.2d at 1125.

The *Frame* decision also rejected the argument that the Act was not a "regulatory" program. The Third Circuit found that Congress established the Act to "strengthen and expand" the nation's beef markets. *Id.* The court noted Congress has in the past regulated commerce by influencing the supply side of agricultural markets (through quotas, loans and subsidies) as well as the demand side (through direct government purchases). In passing the Beef Promotion Act, Congress chose to promote and stimulate the demand side of the market indirectly, by influencing consumer attitudes towards beef. *Id.* at 1126. As noted in *Frame*, the legal definition of "regulate," rather than a more restrictive definition from a standard dictionary of the English language, should be applied in this context. *Id.* at 1126 n. 5.

In *Frame*, the court likewise considered an argument that the Act is unconstitutional because no "activity" is being regulated. In *Frame*, the defendant argued that Congress' failure to specify the particular activity being regulated was fatal. The court stated, "we

decline to invalidate an otherwise lawful exercise of the commerce power on the basis Congress has not specified whether it is regulating the 'activity' of 'consumer beef purchases,' 'interstate beef sales,' or 'national beef markets.' Each activity is related, and is validly regulated by Congress." *Id.* at 1127.

Finally, the *Frame* court considered whether there was a rational connection between the regulatory means selected and the asserted ends. The court stated, "To stimulate the demand for beef, the lack of which Congress has determined is harming the beef industry, Congress has chose from its arsenal of regulatory means promotion and advertising, research, consumer information and industry information. These endeavors are rationally related to the maintenance and expansion of the nation's beef markets." *Id.* Accordingly, the court concluded that the Beef Promotion Act was a valid exercise of Congress' power to regulate interstate commerce. *Id.*

This court agrees with the reasoning and holding of the Third Circuit. The means selected by the Act are reasonably related to the congressional objectives. The Act sets up a system of promotion, advertising and research. These provisions are reasonably calculated to further the goal of strengthening the position of beef in the marketplace by stimulating consumer demand for beef and increasing sales of beef.

Plaintiff argues that the promotion of beef is offset by other promotion schemes, such as for pork. The court finds it to be rational for Congress to seek to stimulate various sectors of the agricultural economy, including competitors of the beef industry. It would be rational for Congress to find that the stimulation of demand in all sectors of the agricultural economy would be in the public interest, benefiting the overall economy through increased domestic consumption and export of agricultural products. The court concludes that it is reasonable for Congress to promote more than one segment of the agriculture industry.

■ The court concludes that the Act is a valid exercise of the commerce power because it is reasonably adapted to the goal of strengthening the beef industry. It is not for this court to determine if Congress selected the best means for achieving its stated goal. That this court (or the plaintiff) could devise a regulatory scheme that is somehow "better" does not render the Beef Promotion Act unconstitutional. The Supreme Court's words in *Preseault* are instructive: "The process of legislating often involves tradeoffs, compromises, and imperfect solutions, and our ability to imagine ways of redesigning the statute to advance one of Congress' ends does not render it irrational." *Preseault v. Interstate Commerce Commission,* 494 U.S. 1, 19, 110 S.Ct. 914, 925, 108 L.Ed.2d 1 (1990).

The Supreme Court's recent case, *United States v. Lopez,* —— U.S. ——, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), which struck down the Gun–Free School Zones Act of 1990 under the commerce clause, does not dictate a different analysis or result. While striking down the Gun–Free School Zones Act because it did not substantially affect interstate commerce, the Supreme Court reiterated the broad powers of Congress to regulate the use of the channels of commerce, to regulate and protect the instrumentalities of commerce or persons or things in commerce, and to regulate those activities having a substantial relation to interstate commerce or substantially affecting interstate commerce.

In *Lopez,* the Court noted that it has upheld a wide variety of congressional acts regulating intrastate economic activity when the Court had concluded that the activity substantially affected interstate commerce. When economic activity substantially affects interstate commerce, legislation regulating that activity will be sustained. *Lopez,* —— U.S. at ——, 115 S.Ct. at 1630. After analyzing the Gun–Free School Zones Act, the Supreme Court concluded that it had nothing to do with any sort of economic enterprise. The Act could not be sustained as a regulation of a commercial transaction which substantially affect interstate commerce. *Id.* at ——–——, 115 S.Ct. at 1630–31.

The Court next turned to a consideration of whether the statute contained a jurisdictional element which would ensure that the

firearm possession affected interstate commerce. The statute in question did not contain an express jurisdictional element which would limit the reach of the statute to those situations which have an explicit connection with or effect on interstate commerce. *Id.* at ——, 115 S.Ct. at 1631. The Court noted that as part of its evaluation of constitutionality under the commerce clause, the Court considers legislative findings regarding effect on interstate commerce. *Id.* However, Congress normally is not required to made formal findings as to the substantial burdens that an activity has on interstate commerce. *Id.* The Court rejected the government's various arguments regarding the potential effects that firearm possession in a school zone would have on interstate commerce. *Id.* at —— – ——, 115 S.Ct. at 1631–34.

As contemplated by the Supreme Court in *Lopez,* the present case involves a situation in which economic activity substantially affects interstate commerce. Additionally, Congress has provided a number of legislative findings in the Beef Promotion Act regarding the effect of the beef industry on interstate commerce.

## II. Taxing Powers

■ The plaintiff next argues that the assessment is a direct tax which is invalid because it is not apportioned as required by the constitution. Plaintiff argues that the raising of revenue is the primary purpose of the statute. Plaintiff asserts that the district court in *Frame* found the assessment under the Act to be a tax. However, the district court assumed arguendo that the Act was an exercise of Congress' taxing powers in order to address the argument that Congress had unlawfully delegated its taxing powers to the Secretary of Agriculture. *United States v. Frame,* 658 F.Supp. 1476, 1479 (E.D.Pa. 1987). This argument was not addressed by the Third Circuit in *Frame* because the issue was abandoned on appeal. 885 F.2d at 1125 n. 4.

■ A regulatory scheme will not constitute a tax unless the real purpose and effect of the statute and regulations promulgated thereunder is to raise revenues for the general support of the government. *Cities Ser-*

*vice Co. v. Federal Energy Admin.,* 529 F.2d 1016, 1029 (Temp.Emer.Ct.App.1975) (citing *Head Money Cases (Edye v. Robertson),* 112 U.S. 580, 595, 5 S.Ct. 247, 252, 28 L.Ed. 798 (1884)), *cert. denied,* 426 U.S. 947, 96 S.Ct. 3166, 49 L.Ed.2d 1184 (1976). The test is well-established:

> The test to be applied is to view the objects and purposes of the statute as a whole and if from such examination it is concluded that revenue is the primary purpose and regulation merely incidental, the imposition is a tax and is controlled by the taxing provisions of the Constitution. Conversely, if regulation is the primary purpose of the statute, the mere fact that incidentally revenue is also obtained does not make the imposition a tax, but a sanction imposed for the purpose of making effective the congressional enactment.

*Cities Service Co.,* 529 F.2d at 1029 (quoting *Rodgers v. United States,* 138 F.2d 992, 994 (6th Cir.1943)); *see also Mulroy v. Block,* 569 F.Supp. 256, 261 (N.D.N.Y.1983), *aff'd per curiam,* 736 F.2d 56 (2d Cir.1984), *cert. denied,* 469 U.S. 1159, 105 S.Ct. 907, 83 L.Ed.2d 922 (1985).

The Beef Promotion Act does not raise revenue for the government. Regulation (in the form of promotion of the beef industry) is the primary purpose of the statute. The mere fact that money changes hands in the pursuit of this object does not render the scheme a tax.

## III. Delegation of Legislative Authority

■ Plaintiff argues that Congress impermissibly delegated its legislative powers, including its taxing and spending powers, to the Secretary, the Cattlemen's Beef Board and the Operating Committee. A similar delegation argument was rejected by the Third Circuit in *Frame.* The court rejects this argument for the same reasons set forth by the Third Circuit.

The Third Circuit rejected the contention that the Act unlawfully delegated legislative authority to the Secretary. Congress not only provided standards for administration of the Act, it set forth with specificity the terms of the Act's implementation. Congress set

the amount of the assessment at $1.00 per head. 7 U.S.C. § 2904(8)(C). Congress set forth detailed procedures for the selection of the Cattlemen's Beef Board and the Operating Committee. 7 U.S.C. § 2904(4)(A). *See Frame*, 885 F.2d at 1128.

The Third Circuit likewise rejected the contention that the Act unlawfully delegated legislative authority to members of the beef industry. The Act and the Order place the Board under the Secretary's "pervasive surveillance and authority." *Id.* at 1129. The Board is appointed by the Secretary. 7 U.S.C. § 2904(1); 7 C.F.R. 1260.141(b). Members of the Board and the Operating Committee are subject to removal by the Secretary. 7 C.F.R. 1260.212. The Secretary must be given notice of all meetings and must approve all budgets and contracts. 7 U.S.C. § 2904(4)(C), 2904(6)(A)–(B); 7 C.F.R. 1260.150(f), (g) & (m), 1260.168(e) & (f), 1260.168(h). The Third Circuit concluded that the Board and the Committee serve an advisory and ministerial function. Congress has set the amount of the assessments and the Secretary ultimately decides how the funds will be spent. *See Frame*, 885 F.2d at 1128–29.

## IV. Taking

▇▇▇ Plaintiff claims that the Beef Promotion Act violates the fifth amendment's takings clause, specifically that the Act constitutes a taking for a non-public use without just compensation. Plaintiff claims that his property (money) has been taken from him to confer a private benefit on private interests within the beef industry.

▇▇▇ The *Frame* court rejected the argument that the Act is an unconstitutional taking of property for a private purpose. The Third Circuit noted that the fifth amendment prohibits the government from taking property for private use, but found that the Beef Promotion Act "was clearly enacted for a public purpose." *Frame*, 885 F.2d at 1138. The determination of what constitutes a public use belongs initially to the legislature, and the court should not substitute its judgment for that of the legislature "unless the use be palpably without reasonable foundation." *Id.* (quoting *Hawaii Housing Authority v. Mid-*

*kiff*, 467 U.S. 229, 241, 104 S.Ct. 2321, 2329, 81 L.Ed.2d 186 (1984)).

Congress believed the Beef Promotion Act was in the public interest. *See* 7 U.S.C. § 2901(b) (quoted supra). Because the beef industry plays a significant role in the national economy and because the success of that industry is vital to the national economy, 7 U.S.C. § 2901(a)(2) & (4), Congress found the promotion of beef to be in the public interest. 7 U.S.C. § 2901(b). The Third Circuit concluded that Congress had, at the very least, a reasonable basis for concluding that such legislation would be in the public interest. *Frame*, 885 F.2d at 1139.

The court will not second-guess the Congress' determination that stimulation of the beef industry is in the public interest. Even if there was a taking, it was for a public use and the plaintiff receives just compensation in the form of the promotion and research aspects of the Act.

## V. Freedom of Speech and Association

▇▇▇ Plaintiff's First Amendment challenge encompasses both freedom of association and freedom of speech. The *Frame* decision rejected these arguments. Again, this court is persuaded by the Third Circuit's reasoning.

▇▇▇ The defendant and intervenors argue that the speech at issue here is "government speech" and immune from First Amendment scrutiny. The *Frame* court found the issue to be close, but found it instead to be "commercial speech." 885 F.2d at 1130–1133. The court noted that the following three part test applies to restrictions on commercial speech: (1) the state must assert a substantial government interest; (2) the regulatory technique must be in proportion to that interest; (3) the incursion on commercial speech must be designed carefully to achieve the state's goal. *Id.* at 1133. However, the *Frame* court found that the free association claims triggered a higher standard of scrutiny than that applied in commercial speech cases: governmental interference with associational rights must be justified by "compelling state interests, unrelated to the suppression of ideas, that cannot

be achieved through means significantly less restrictive of associational freedoms." *Id.* at 1134 (quoting *Roberts v. United States Jaycees,* 468 U.S. 609, 623, 104 S.Ct. 3244, 3252–53, 82 L.Ed.2d 462 (1984)).

The Third Circuit ruled that the Act would be constitutional only if the government could demonstrate that the Act was adopted to serve compelling state interests, that are ideologically neutral, and that cannot be achieved through means significantly less restrictive of free speech or associational freedoms. The court concluded that the importance of the governmental interest justified the slight incursion on associational and free speech rights. *Id.* The court found the national interest in maintaining and expanding beef markets to be compelling. *Id.* The purpose underlying the Act was found to be neutral. The government sought to bolster the image of beef solely to increase sales, not to prescribe any official view. *Id.* at 1135. Finally, the court found the infringement on first amendment rights to be slight. The Board is authorized to engage in commercial speech on behalf of beef producers, to promote the product the producers have chosen to market. The Board is prohibited from spending funds for political activity. The court concluded that the Act was drafted in a way that infringes on the contributors' rights no more than necessary to achieve the stated goal. *Id.* at 1135–37.

This court is persuaded by the Third Circuit's decision on the first amendment issues. Accordingly, the court rejects the plaintiff's arguments that the Act violates his freedom of speech and association.

## VI. Equal Protection

 As the *Frame* court noted, the fifth amendment contains an implicit equal protection component that prohibits the federal government from discriminating between individuals or groups. "Unless the statute creates a suspect classification or impinges upon a constitutionally protected right, however, it need only be shown that the differential treatment bears 'some rational relationship to a legitimate state purpose.'" *Id.* at 1137 (quoting *City of Dallas v. Stanglin,* 490 U.S.

19, 23, 109 S.Ct. 1591, 1594, 104 L.Ed.2d 18 (1989)).

 Plaintiff does not argue that the Act categorizes on the basis of an inherently suspect characteristic such as race. Plaintiff argues that the Act impinges upon his fundamental first and fifth amendment rights and, accordingly, the Act is to be reviewed under the strict scrutiny standard. However, unless a classification actually jeopardizes the exercise of a fundamental right, the equal protection clause requires only that the classification rationally further a legitimate governmental interest. *Nordlinger v. Hahn,* 505 U.S. 1, 8–12, 112 S.Ct. 2326, 2331–32, 120 L.Ed.2d 1 (1992); *United States v. Phelps,* 17 F.3d 1334, 1344 (10th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 135, 130 L.Ed.2d 77 (1994); *O'Connor v. City and County of Denver,* 894 F.2d 1210, 1223–24 (10th Cir.1990). Since the court has already ruled that the legislative classification does not infringe the plaintiff's first and fifth amendment rights, the strict scrutiny standard of review does not apply.

Plaintiff argues additionally that the Act does not pass the rational relationship test. Plaintiff argues that there is no rational reason why a program which is supposed to benefit the entire industry should be subsidized by producers and importers only. The court disagrees. As noted in *Frame,* there are several rational bases for Congress' decision: an assessment on the initial sale of cattle is easier to administer; ranchers would be the most benefitted by the Act; ranchers could pass the cost on to others. *Frame,* 885 F.2d at 1137–38. Finally, Congress may have wanted to grant cattle producers the maximum influence in shaping the program and imposed upon them the corresponding financial burdens. *Id.* at 1138. Accordingly, this court rejects plaintiff's equal protection challenge to the Beef Promotion Act.

Given this resolution, the court need not address the remaining arguments of defendant and intervenors. Any arguments of the plaintiff which the court has not specifically addressed herein have been considered and rejected by the court.

**IT IS BY THE COURT THEREFORE ORDERED** that the motions to dismiss filed

by the defendant (Doc. 29, Doc. 112) and the intervenors (Doc. 101, Doc. 110) are hereby granted.

**IT IS FURTHER ORDERED** that the plaintiff's motions for summary judgment (Doc. 73, Doc. 118, and Doc. 131) are hereby denied.

**IT IS FURTHER ORDERED** that plaintiff's motion for class certification (Doc. 22) is moot.

**IT IS FURTHER ORDERED** that the defendant's motion for reconsideration (Doc. 32) is hereby granted. The court hereby sets aside the prior orders (Doc. 5, Doc. 7, Doc. 19, and Doc. 28) which enjoined and stayed the administrative proceedings pending against the plaintiff.