**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 10 1998**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JERRY GOETZ d/b/a JERRY GOETZ
and SONS, individually and on behalf of
others similarly situated,

      Plaintiff-Appellant,

v.

DAN GLICKMAN, Secretary, United
States Department of Agriculture,

      Defendant-Appellee,

and

WILLIE REIBEL, RODNEY and
LARRY MENSE, JAN LYONS,
KANSAS LIVESTOCK ASSOCIATION,
NATIONAL CATTLEMEN'S
ASSOCIATION, and NATIONAL
LIVESTOCK AND MEAT BOARD,

      Intervenors-Appellees.

No. 96-3120

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D. Ct. No. 94-1299-FGT)**
**(920 F. Supp. 1173)**

---

David R. Klaassen (Clarence L. King and Brian W. Wood of Hampton, Royce, Engleman
& Nelson, L.C., Salina, Kansas, with him on the brief), Marquette, Kansas, appearing for
Plaintiff-Appellant.

Douglas N. Letter and Sushma Soni, United States Department of Justice, Washington, D.C., appearing for Defendant-Appellee.

Wayne Watkinson and Richard T. Rossier of McLeod, Watkinson & Miller (John G. Roberts, Jr. and Gregory G. Garre of Hogan & Hartson, L.L.P., Washington, D.C., with them on the brief), Washington, D.C., appearing for Intervenors-Appellees.

---

Before **MURPHY** and **LOGAN**, Circuit Judges, and **MILES-LaGRANGE**, District Judge.[*]

---

**MILES-LaGRANGE**, District Judge.

---

Plaintiff Jerry Goetz ("Goetz"), a Kansas cattle farmer, appeals the district court's ruling in favor of Dan Glickman, Secretary, U.S. Department of Agriculture ("Secretary"). Goetz claims the Beef Promotion and Research Act of 1985, 7 U.S.C. § 2901(a) ("Beef Promotion Act" or "Act"), is unconstitutional. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

**Facts and Proceedings Below**

Goetz filed this class action lawsuit against the Secretary contending that his and other class members' constitutional rights are being violated because they must pay a $1.00 per head "assessment" on the sale and importation of cattle as authorized by the

---

[*]The Honorable Vicki Miles-LaGrange, United States District Judge of the Western District of Oklahoma, sitting by designation.

-2-

Beef Promotion Act. The district court's decision provides a succinct description of the

Act's regulatory scheme:

> The Act directs the Secretary to promulgate a Beef Promotion and Research Order ("the Order"), that provides for financing beef promotion and research through the assessments on cattle sold in the United States and cattle, beef, and beef products imported into the United States. 7 U.S.C. § 2901(b), 2903, 2904(8)(A)-(C). The Order established by the Secretary (7 C.F.R. Part 1260, Subpart A) established the Cattlemen's Beef Promotion and Research Board ("the Cattlemen's Beef Board") and the Beef Promotion Operating Committee ("the Operating Committee"). 7 U.S.C. § 2904(1)-(7); 7 C.F.R.1260.141,1260.161. The Cattlemen's Beef Board is made of cattle producers and importers appointed by the Secretary. 7 U.S.C. § 2904(1); 7 C.F.R. 1260.141. The Board's principal duties are to administer the Order, make rules and regulations to effectuate the terms and provisions of the Order, elect members of the Board to serve on the Operating Committee, to approve or disapprove the budget submitted by the Operating Committee, to receive, investigate and report to the Secretary complaints of violations of the Order, and [to] recommend to the Secretary amendments to the Order. 7 U.S.C. § 2904(2)(A)-(F).
>
> The Operating Committee is composed of ten members of the Cattlemen's Beef Board and ten members elected by a federation of State beef councils. 7 U.S.C. § 2904(4)(A); 7 C.F.R. 1260.161. The Operating Committee develops and submits to the Secretary for approval promotion, advertising, research, consumer information and industry information plans and projects. 7 U.S.C. § 2904(4)(B); 7 C.F.R. 1260.168. The Act prohibits the use of funds for political purposes. 7 U.S.C. § 2904(10).
>
> The Act requires cattle producers in the United States to pay a one dollar per head assessment on cattle sold in this country. 7 U.S.C. § 2904(8)(A) & (C); 7 C.F.R.1260.172 (a)(1), 1260.310. Each person making payment to a cattle producers [sic] for cattle is a "collecting person" who is required to collect the assessments and remit them to a qualified State beef council in the State in which the collecting person resides, or, if there is no qualified State beef council, to the Cattlemen's Beef Board. 7 U.S.C. § 2904(8)(A); 7 C.F.R. 1260.311(a), 1260.312(c). Each collecting person must report to the Board certain information for each calendar month at the time the assessments are remitted and must maintain and make available for the Secretary's inspection the records necessary to

verify the reports.  7 U.S.C. § 2904(11); 7 C.F.R. 1260.201, 1260.312(a)-(c), 1260.202.

The Secretary is authorized to conduct investigations and to issue subpoenas to determine if there has been a violation of the Act, the Order, or the rules and regulations thereunder.  7 U.S.C. § 2909.  After an administrative hearing, the Secretary may issue an order restraining violations and may impose a civil penalty of up to $5,000 for each violation of the Act and the Order.  Id. § 2908(a).  In addition, the Secretary may request the Attorney General to initiate a civil action to enforce, and to restrain a person from violating, any order or regulation under the Act.  Id. § 2908(b), (c).

Within 22 months of the issuance of the Order, the Act required the Secretary to conduct a referendum among those persons who were producers and importers during that trial period.  The Order would continue to operate only upon approval by a majority of those participating in the referendum.  7 U.S.C. § 2906(a).  Prior to the referendum, a cattle producer who paid the assessment could demand a one-time refund.  Id. § 2907; 7 C.F.R. 1260.173, 1260.174.  On May 10, 1988, the referendum was conducted and the Order was approved.

Plaintiff is a "producer" within the meaning of the Act.  7 U.S.C. § 2902(12).  As a producer, plaintiff is subject to the one dollar per head assessment upon the sale of cattle.  Plaintiff alleges that at times he makes payments to other producers for cattle purchased from such producers, and thus he is a "collecting person" under the Act.  Id. § 2904(8)(A).  As a collecting person, plaintiff is subject to the collecting provisions of the Act and accompanying regulations.

See Goetz v. Glickman, 920 F. Supp. 1173, 1176-77 (D. Kan.1996) (footnote omitted).

On October 29, 1993, the Secretary commenced administrative proceedings

against Goetz because he failed to comply with the Beef Promotion Act and pay the

assessment.  A hearing before an administrative law judge was set for August 8, 1994.

On August 2, 1994, Goetz filed a civil action in district court and moved for a temporary

restraining order to enjoin the Secretary from proceeding with the administrative hearing.

The district court entered a temporary restraining order which expired on August 15,

1994.  On August 19, 1994, the parties agreed, with the court's approval, to stay the administrative proceedings until October 1, 1994.  As part of the agreement, Goetz agreed to let an accounting firm audit his company.  Over the objection of the Secretary, the district court continued the stay throughout the litigation.

Four Kansas cattle producers and three non-profit associations representing cattle producers in Kansas and throughout the nation intervened in the lawsuit to defend the Act.[1]  On Dec. 8, 1995, the district court heard oral arguments from the parties.[2]  Goetz argued the Act was unconstitutional because it (1) was beyond Congress' power to regulate interstate commerce, (2)  imposed an unconstitutional direct tax, (3) effected an impermissible delegation of legislative authority, (4) violated the Takings Clause of the Fifth Amendment, (5) violated the Equal Protection Clause of the Fourteenth Amendment, and (6) infringed on the first amendment rights of cattle producers.  He sought a ruling in the district court that the Act is unconstitutional, an injunction against its enforcement, and a refund of assessments he has paid.

On Feb. 28, 1996, the district court upheld the constitutionality of the Act adopting the reasoning of the Third Circuit Court of Appeals in United States v. Frame, 885 F.2d

---

[1]In their brief, the intervenors/appellees adopted the arguments made by the Secretary and addressed Goetz' first amendment challenge arguing the Act is not subject to first amendment scrutiny because it is government speech.

[2]The National Pork Producers Council, the American Soybean Association and the National Potato Council filed amicus briefs in the district court.

1119 (3d Cir. 1989), cert. denied, 493 U.S. 1094 (1990).[3]  The district court found that promoting the beef industry is a proper object of legislation under Congress' commerce power because it is reasonably adapted to the goal of strengthening the beef industry.  920 F. Supp. at 1180. The district court also held that the assessment imposed by the Beef Promotion Act is not a tax because the Act does not raise revenue for the government and regulation is the primary purpose of the statute. See id. at 1181.  The court further held that Congress did not unlawfully delegate its legislative authority to the members of the beef industry because the Act places the Board under the Secretary's authority, Congress sets the amount of the assessments, and the Secretary decides how the funds will be spent. See id. at 1182.  As to Goetz' takings clause claim, the district court concluded there was no fifth amendment violation because the government is not taking money for private use or to confer a private benefit on private interests (beef groups) in the beef industry. See id.  Since Congress has determined beef promotion is in the public interest, the district court held courts should not substitute their judgment for Congress'. See id.

With regards to Goetz' first amendment claim, the district court agreed with the Frame court and found there was no free speech or free association violation because the Act is "commercial speech" not "government speech."[4]  The district court concluded that

---

[3]The plaintiff in Frame also challenged the constitutionality of the Beef Promotion Act.

[4]The district court, like the court in Frame, recognized the issue was a close one. See id. at 1182.

the Act passed the test outlined in <u>Central Hudson Gas & Elec. Corp. v. Public Service Comm'n</u>, 447 U.S. 557 (1980) on the free speech claim.[5] The court also concluded Goetz' first amendment free association claim should be analyzed under the higher standard of scrutiny set forth in <u>Roberts v. United States Jaycees</u>, 468 U.S. 609 (1984).[6] 920 F. Supp. at 1182. The district court found the Act's restrictions passed this test because there was only a slight incursion on Goetz' associational rights, the national interest was compelling, the purpose of trying to bolster the beef image was neutral, the Act did not proscribe any official view, and no political funding was authorized by the statute. <u>See</u> <u>id</u>. at 1183.

Finally, the district court found there was no equal protection violation. The court held that Congress had a rational basis for enactment of the statute. Specifically, the district court determined that an assessment was easier to administer, ranchers would be the most benefitted by the Act and ranchers could pass any costs incurred on to others,

---

[5]Restrictions on commercial speech are subject to the test outlined in <u>Central Hudson</u>: (1) the State must assert a substantial government interest; (2) the regulatory technique must be in proportion to that interest; and (3) the incursion on commercial speech be designed carefully to achieve the State's goal. 447 U.S. at 564.

[6] Under <u>Roberts</u>, the governmental interference with associational rights must be justified by "compelling state interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms." 468 U.S. at 623.

and since Congress gave cattle producers the maximum influence in shaping the program, it rationally decided to pass along the corresponding financial burden to them.[7] See id.

The district court (1) granted the motion to dismiss filed by the Secretary and intervenors; (2) denied Goetz' motion for summary judgment; (3) declared Goetz' motion for class certification moot; and (4) set aside its prior orders staying the administrative proceedings. See id. at 1184. Goetz appeals the district court's decision and asks this court to declare the Act unconstitutional, give him injunctive relief from the administrative proceedings, and order the return of funds he and other class members paid as assessments under the Beef Promotion Act.

On July 9, 1997, we directed the parties to file supplemental briefs addressing the effect of the Supreme Court's decision in Glickman v. Wileman Bros. & Elliot, Inc., 117 S.Ct. 2130 (1997) on Goetz' first amendment claim. In Wileman Bros., the Supreme Court, resolving a circuit split, held the regulations imposing a generic advertising program for California peaches, nectarines, and plums paid for by mandatory assessments on fruit handlers, did not implicate or violate the First Amendment.

---

[7]The district court also held that because no fundamental right was involved the Equal Protection Clause only required that the classification rationally further legitimate governmental interests. See id. at 1183 (citing Nordlinger v. Hahn, 505 U.S. 1, 8-12, 112 S.Ct. 2326, 2331-32, 120 L.Ed.2d 1 (1992); United States v. Phelps, 17 F.3d 1334, 1344 (10th Cir.), cert. denied, 513 U.S. 844, 115 S.Ct. 135, 130 L.Ed.2d 77 (1994); O'Connor v. City and County of Denver, 894 F.2d 1210, 1223 (10th Cir. 1990)).

**Analysis**

In this appeal, Goetz raises all of the same claims made in the district court except the unconstitutional delegation of power and taking clause claims. The ruling of the district court is reviewed <u>de</u> <u>novo</u>. <u>National Commodity & Barter Ass'n v. Gibbs</u>, 886 F.2d 1240, 1243-44 (10th Cir. 1989) (legal issues are reviewed <u>de</u> <u>novo</u>).

<u>Commerce Clause</u>

Goetz first argues the Beef Promotion Act is unconstitutional because it violates the Commerce Clause. He contends (1) the Act does not have a public purpose, (2) the Act does not regulate an activity which substantially affects interstate commerce, and (3) there is no rational connection between the regulatory means selected and the asserted ends. In response, the Secretary argues beef purchases and sales substantially affect interstate commerce. Furthermore, the Secretary argues, the Act, which authorizes promotion and research to strengthen the beef industry and is funded by a regulatory assessment, represents a valid exercise of Congress' commerce power. In addition, the regulation of interstate commerce encompasses promotion as well as prohibition. The Secretary contends promotion and research are reasonably adapted to the Act's goal of strengthening the market through increased consumption because advertising affects demand.

The United States Supreme Court has clearly defined a court's function in examining Congress' exercise of its power under the Commerce Clause:

> The task of a court that is asked to determine whether a particular exercise of congressional power is valid under the Commerce Clause is relatively narrow. The court must defer to a congressional finding that a regulated activity affects interstate commerce, if there is any rational basis for such a finding. This established, the only remaining question for judicial inquiry is whether the means chosen by [Congress] is reasonably adapted to the end permitted by the Constitution. The judicial task is at an end once the court determines that Congress acted rationally in adopting a particular regulatory scheme.
> Judicial review in this area is influenced above all by the fact that the Commerce Clause is a grant of plenary authority to Congress. This power is complete in itself, may be exercised to its utmost extent, and acknowledges no limitations, other than are prescribed in the constitution. Moreover, this Court has made clear that the commerce power extends not only to the use of channels of interstate or foreign commerce and to protection of the instrumentalities of interstate commerce or persons or things in commerce, but also to activities affecting commerce. As we explained in Fry v. United States, 421 U.S. 542, 547, 95 S.Ct. 1792, 1795, 44 L.Ed.2d 363 (1975), even activity that is purely intrastate in character may be regulated by Congress, where the activity, combined with like conduct by others similarly situated, affects commerce among the States or with foreign nations. Thus, when Congress has determined that an activity affects interstate commerce, the courts need inquire only whether the finding is rational.

Hodel v. Virginia Surface Mining & Reclamation Ass'n, 452 U.S. 264, 276 (1981) (internal citations and quotations omitted). See also State of Oklahoma v. Federal Energy Regulatory Commission, 661 F.2d 832, 837 (10th Cir. 1981), cert. denied, Texas v. Federal Energy Regulatory Commission, 457 U.S. 1105 (1982); United States v. Hampshire, 95 F.3d 999, 1001-1002 (10th Cir. 1996), cert. denied, 117 S.Ct. 753 (1997).

In examining the validity of Congress' exercise of power, we begin with the language contained in the Act itself. Congress made the following findings when it passed the Beef Promotion Act:

(1) beef and beef products are basic foods that are a valuable part of human diet;

(2) the production of beef and beef products plays a significant role in the Nation's economy, beef and beef products are produced by thousands of beef producers and processed by numerous processing entities, and beef and beef products are consumed by millions of people throughout the United States and foreign countries;

(3) beef and beef products should be readily available and marketed efficiently to ensure that the people of the United States receive adequate nourishment;

(4) the maintenance and expansion of existing markets for beef and beef products are vital to the welfare of beef producers and those concerned with marketing, using, and producing beef products, as well as to the general economy of the Nation;

(5) there exist established State and national organizations conducting beef promotion, research, and consumer education programs that are invaluable to the efforts of promoting the consumption of beef and beef products; and

(6) beef and beef products move in interstate and foreign commerce, and beef and beef products that do not move in such channels of commerce directly burden or affect interstate commerce of beef and beef products.

7 U.S.C. § 2901(a).

Congress' purpose and objectives are clearly set forth in the Act:

It, therefore, is declared to be the policy of Congress that it is in the public interest to authorize the establishment, through the exercise of the powers provided herein, of an orderly procedure for financing (through assessments on all cattle sold in the United States and on cattle, beef, and beef products imported into the United States) and carrying out a coordinated program of promotion and research designed to strengthen the beef industry's position in the marketplace and to maintain and expand domestic and foreign markets and uses for beef and beef products. Nothing in this Act shall be construed to limit the right of individual producers to raise cattle.

7 U.S.C. § 2901(b).

Goetz first contends that beef production does not substantially affect interstate commerce.[8]  For congressional exercise of power to be valid under the commerce clause, the legislation must involve an activity that substantially affects interstate commerce. United States v. Lopez, 115 S.Ct. 1624, 1630 (1995) (Court struck down the Gun Free School Zone Act of 1990 enacted under the commerce clause because it had nothing to do with any sort of economic enterprise).  As the district court noted,  "It should be beyond dispute that beef moves in and substantially affects interstate commerce, thus making the beef industry a proper object of legislation under the commerce clause." 920 F. Supp. at 1179.  We also conclude Congress had a rational basis for finding the beef industry substantially affects interstate commerce.

Goetz also argues Congress really intended to regulate advertising.  However, the plain language of the statute reveals the purpose of the Act is to strengthen the beef industry and we conclude this is a legitimate congressional goal. We further conclude the objective of the Act is valid and the stimulation of the beef market is a proper regulatory activity.

---

[8]Goetz contends the Act is unconstitutional because it does not have a public purpose.  Essentially, he argues the Act's primary purpose is to raise revenue, therefore it is a direct tax impermissibly levied upon him.  See Brief of Appellant at 31.  As set forth below, we hold the Act's primary purpose is to regulate, therefore it is not a tax.

Goetz contends Congress' commerce power is limited to restricting or prohibiting an activity.[9]  We agree with the well reasoned opinion of our sister circuit in United States v. Frame, 885 F.2d 1119 (3d Cir. 1989), cert. denied, 493 U.S. 1094 (1990).  The Third Circuit said, "[I]t is now indisputable that the power to regulate interstate commerce includes the power to promote interstate commerce."  Id. at 1126.  The Act regulates commerce by authorizing the collection of an assessment that is used to promote and advertise beef.  The Supreme Court has recognized that advertising stimulates consumer demand for the product being promoted.  See Posadas de Puerto Rico Associates v. Tourism Co., 478 U.S. 328, 343 (1986).   The court in Frame also rejected the argument that the Act is not regulatory noting that Congress chose to promote and stimulate the demand side of the beef market indirectly, by influencing consumer attitudes toward beef. 885 F.2d at 1126.  The Frame court likewise rejected Goetz' argument that the Act is unconstitutional because no activity is being regulated.  The court stated: "[W]e decline to invalidate an otherwise lawful exercise of the commerce power on the basis Congress has not specified whether it is regulating the 'activity' of 'consumer beef purchases,' 'interstate beef sales,' or 'national beef markets.'  Each activity is related, and is validly regulated by Congress."  Id. at 1127.

---

[9]Goetz contends Congress does not have the power to "stimulate and promote" commerce since Congress' power is limited to a) leaving the activity alone; b) restricting the activity; or c) prohibiting the activity.

Goetz also contends there is no rational connection between the regulatory means selected and the asserted end. Goetz contends since the government has set up a pork promotion and research board (among others), and pork is the primary competitor of beef, it is not reasonable for the Secretary to engage in conflicting programs. In addition, Goetz argues the Act does not serve its stated purpose to regulate beef and Congress is actually trying to regulate advertising.

In considering this argument, the Frame court stated: "To stimulate the demand for beef, the lack of which Congress has determined is harming the beef industry, Congress has chosen from its arsenal of regulatory means promotion and advertising, research, consumer information and industry information. These endeavors are rationally related to the maintenance and expansion of the nation's beef markets." Id. The Frame court found that the Act was a valid exercise of Congress' power to regulate interstate commerce. See id. We agree. Goetz' argument that the promotion of beef is offset by other promotion schemes such as for pork is without merit. We hold Congress has a rational basis for stimulating different areas of the agricultural economy and determining its various promotional programs are in the best interest of the public.

In sum, we conclude that under current Supreme Court precedent, Congress has validly exercised its commerce powers in enacting the Beef Promotion Act.

Direct Tax

-14-

Goetz also argues the assessment is a direct tax that must be apportioned uniformly among the states to be constitutional under the Taxing Clause because the Act's primary purpose is to raise revenue. Goetz argues the Act is a direct tax and relies on legislative history to support his contention Congress never intended it to be a regulatory program. Goetz contends the assessments flow to qualified beef councils and national private trade associations in the beef industry.

The Secretary argues the Apportionment Clause is inappropriate because Congress clearly intended to exercise its authority under the Commerce Clause. The Secretary contends assessment is not the objective of the Act but merely a funding mechanism for the promotion of the beef industry and research. The Secretary further argues the assessment is not a tax but is like a "special assessment" imposed on convicted criminals under the Victims of Crimes Act, or mandatory bar dues or union dues. Finally, the Secretary points out that Goetz has no evidence that the assessment is a direct tax.

The test for determining whether an assessment is a tax has been clearly enunciated by the Sixth Circuit Court of Appeals:

> The test to be applied is to view the objects and purposes of the statute as a whole and if from such examination it is concluded that revenue is the primary purpose and regulation merely incidental, the imposition is a tax and is controlled by the taxing provisions of the Constitution. Conversely, if regulation is the primary purpose of the statute, the mere fact that incidentally revenue is also obtained does not make the imposition a tax, but a sanction imposed for the purpose of making effective the congressional enactment.

Rodgers v. United States, 138 F.2d 992, 994 (6th Cir. 1943). See also Chickasaw Nation v. State of Oklahoma ex rel Oklahoma Tax Commission, 31 F.3d 964, 968 (10th Cir. 1994) (quoting American Petrofina Co. of Texas v. Nance, 859 F.2d 840, 841 (10th Cir. 1988) ("[t]he mere fact a statute raises revenue does not imprint upon it the characteristics of a law by which the taxing power is exercised.")). We agree with the district court that the primary purpose of the Act is regulation, not to raise revenues.

### First Amendment

Goetz also asserts the assessment violates his First Amendment right because he is compelled to support advertising which promotes beef consumption.[10] Goetz argues the Act singles out and unfairly burdens producers, importers and persons who must collect the tax (buyers of beef).

The Secretary responds that the Act does not suppress or restrict Goetz' speech, it merely requires he pay an assessment to fund the promotion of a commodity that he markets and is no different than compelled funding of unions or integrated bars. Furthermore, the Secretary and intervenors argue the Act is "government speech" (as opposed to commercial speech) and there are no First Amendment restrictions on "government speech."

---

[10] The $1.00 per head assessment on the sale and importation of cattle funds the Operating Committee's activities, which include the promotion of the beef industry throughout the country through "generic advertising." The generic advertisements include the familiar "Beef, it's what's for dinner" promotion.

This Court agrees with the Secretary and intervenors. Glickman v. Wileman Bros.& Elliot, Inc., 117 S.Ct. 2130 (1997), involved a First Amendment challenge to a generic advertising program for California peaches, nectarines, and plums which was established pursuant to a marketing order promulgated by the Secretary of Agriculture and supported by mandatory assessments imposed on the handlers of fruit. The Supreme Court granted certiorari to resolve the conflict between the Ninth Circuit in Glickman v. Wileman Brothers & Elliot, Inc., 58 F.3d 1367 (1995), which held the peach promotion program violated the First Amendment, and the Third Circuit in Frame, which held the Beef Promotion Act did not violate the First Amendment.

In Wileman Bros. the Supreme Court held that the generic marketing program did not raise a First Amendment issue for the Court because the marketing order did not impose restraint on the freedom of any producer to communicate any message to any audience, did not compel any person to engage in any actual or symbolic speech, and did not compel the producers to endorse or to finance any political or ideological views. See id. at 2138. The Supreme Court found its compelled speech cases inapplicable because there is no "compelled speech." The Court held the assessments for ads did not require the fruit producers to repeat objectionable messages, use their property to convey antagonistic ideological messages, force them to respond to a hostile message when they prefer to remain silent or require them to be publicly identified or associated with another's message. See id. at 2139. Furthermore, the Court said, the assessments are

-17-

financial contributions for generic advertising that program participants do not disagree with, and the advertising is not attributed to individual handlers. See id. In addition, none of the generic ads promote any particular message other than encouraging consumers to buy California tree fruit. See id.

The Court concluded that the generic ads for California fruit are germane to the purposes of the marketing orders and the assessment is not used for ideological activities. See id. at 2140. The Court further concluded that generic advertising is a species of economic regulation that should enjoy the same strong presumption of validity that the Court accords other policy judgments made by Congress. See id. at 2141. Finding the generic advertisements do not warrant special First Amendment scrutiny under the Central Hudson standard, the Supreme Court reversed the Ninth Circuit decision. See id. at 2142.

In the case at bar, the district court incorrectly concluded that the Act was commercial speech and applied Central Hudson. The district court found the Act passed the Central Hudson test and did not violate Goetz' freedom of speech and association. Goetz v. Glickman, 920 F. Supp. at 1182-83. We find the district court erred in applying the Central Hudson test to Goetz' First Amendment claim. However, we can affirm the district court on a basis not relied on by the court if supported by record and law. United States v. Corral, 970 F.2d 719, 726 n.5 (10th Cir. 1992). Therefore, we affirm the district

court and find under the Supreme Court's decision in <u>Wileman Bros.</u>, Goetz' First Amendment claim is fruitless.

Equal Protection

Finally, Goetz contends the assessment violates the Equal Protection Clause because it infringes on his First and Fifth amendment rights. Therefore, he argues, the Act must be reviewed under strict scrutiny to determine whether the statute is narrowly tailored to further a compelling governmental interest. Goetz argues the Act unfairly burdens producers, importers and collecting persons while benefitting the entire beef industry. Goetz also contends Congress' interests in preserving the American cattlemen's traditional way of life and avoiding the free rider problem are not compelling or substantial governmental interests. Goetz further argues the refund provisions of the Act suggest the government's interest is not compelling or substantial. Goetz contends there are numerous less restrictive means available to Congress as evidenced by the legislative discussions.[11]

---

[11]Goetz contends his fundamental rights under the First and Fifth Amendments have been infringed and therefore strict scrutiny applies. In addition, Goetz contends that the Beef Promotion Act is presumed to be unconstitutional for the purposes of analysis of his First and Fifth Amendment claims. However, we conclude Goetz' claims must be analyzed under the rational basis test and the Act, therefore, is presumptively constitutional and the burden falls on Goetz to show that the Act is irrational or arbitrary and cannot further a legitimate governmental interest. See <u>United States v. Phelps</u>, 17 F.3d 1334, 1345 (10th Cir.), <u>cert</u>. <u>denied</u>, 115 S.Ct. 135 (1994). In his appellate brief,

(continued...)

-19-

In response, the Secretary argues the failure of Goetz' First Amendment claim dooms his equal protection challenge as well. Since he does not allege a suspect class, the Secretary contends the strict scrutiny standard of review does not apply. Furthermore, the Act does not infringe on Goetz' equal protection rights because it makes an economic distinction and need only be rationally related to a legitimate governmental interest. The Secretary argues the Act easily survives the rational basis test because Congress has a compelling interest in strengthening the beef industry. In addition, the Secretary argues, Congress also rationally decided the members of the industry that have the most to gain should bear the economic costs involved.

The Fifth Amendment's Equal Protection Clause prohibits the federal government from discriminating between individuals or groups. Government classification that actually jeopardizes the exercise of a fundamental right or a suspect class (race, gender, etc.) must be reviewed under a strict scrutiny standard and must be precisely tailored to further a compelling governmental interest. Edwards v. Valdez, 789 F.2d 1477, 1483 (10th Cir. 1986). If no suspect class or fundamental right is involved, the Equal Protection Clause only requires that the classification rationally further a legitimate governmental interest. See Nordlinger v. Hahn, 505 U.S. 1 (1992); O'Connor v. City and County of Denver, 894 F.2d 1210, 1223-24 (10th Cir. 1990).

---

[11](...continued)
Goetz fails to address his equal protection claim under the rational basis test, arguing only the strict scrutiny standard of review.

We agree with the district court's determination that the Act does not violate Goetz' First and Fifth Amendment rights, and the strict scrutiny standard of review does not apply. Although Goetz failed to address his equal protection claims under the rational basis test, the court in <u>Frame</u> identified several rational bases for Congress' enactment of the statute: (1) an assessment on the initial sale of cattle is easier to administer; (2) ranchers would be most benefitted by the Act; and (3) ranchers could pass the cost on to others. <u>Frame</u>, 885 F.2d at 1137-38. This Court finds the Act easily survives Goetz' equal protection challenge as well.

## Conclusion

The judgment of the district court is AFFIRMED in all respects on Goetz' Commerce Clause, Taxing Clause and Equal Protection Clause claims. The district court's decision is AFFIRMED on Goetz' first amendment claims under the reasoning of the Supreme Court in <u>Glickman v. Wileman Bros. & Elliot, Inc.</u>, 117 S.Ct. 2130 (1997).