Harry G. COPSEY, Petitioner,

v.

NATIONAL TRANSPORTATION SAFETY BOARD, and Federal Aviation Administration, Respondents.

No. 92–9502.

United States Court of Appeals, Tenth Circuit.

May 10, 1993.

J. Scott Hamilton, Louisville, CO, for petitioner.

Edmund J. Averman, III (Peter J. Lynch, with him on the brief), Federal Aviation Admin., Washington, DC, for respondents.

Before EBEL and McWILLIAMS, Circuit Judges, and OWEN, District Judge.*

OWEN, Senior District Judge.

Petitioner Harry C. Copsey, an airline transport pilot, appeals the sixty-day suspension of his pilot's certificate by the National Transportation Safety Board ("NTSB") for violations of Federal Aviation Regulations ("FAR"): 1) operating an aircraft on a commercial cargo-carrying flight from Colorado to New Mexico when one of the plane's propeller blades was so damaged as to make the plane unairworthy and 2) failing to enter that condition promptly in the aircraft's maintenance log record.

Copsey had flown his twin-engine cargo plane into the Colorado Springs airport on the evening of February 22, 1988. While he was taxiing to the parking area, a propeller blade hit a cable, and was somewhat damaged. Copsey was not aware of this, but it was called to his attention the next day as he prepared to take off for Albuquerque. The damaged propeller blade, according to the mechanic's testimony, "had the tip, maybe one inch of it, maybe an inch and a half, two inches of it gone, jaggedly broken off or torn off, really, and it had a gouge in the blade, itself." Copsey was advised not to fly the plane in that condition, but he flew it to Albuquerque anyway. Upon arrival, in a routine surveillance, a Federal Aviation Administration ("FAA") inspector noticed what he called "quite obvious" damage. At the hearing, the inspector testified that the damage was "significant" and "[t]he fact that it was gouged and torn could only indicate that it was not a question of would it fatigue. It was just a question of how long it would take in operation for that to propogate [sic] and result in a failure of the blade." He further stated that, according to numerous investigation reports, "the significance of a portion of the blade or the entire blade departing the propeller is the fact that a tremendous imbalance—considering the rotational speed of the propeller, ... results, which in many cases will simply tear the engine from its mounts, and it will depart the aircraft." Another inspector who had observed the damage to Copsey's propeller testified that if a propeller has such a nick in it; "the prop can break off in that area, and if you break the propeller off at that area, in some cases that engine will come right out of the airplane." The propeller was taken to a repair facility for repair, but was there determined to be damaged beyond repair.

* The Honorable Richard Owen, Senior United States District Court Judge for the Southern District of New York, sitting by designation.

At the subsequent hearing before an NTSB administrative law judge, in addition to extensive first-hand factual evidence, competent expert testimony was received to the effect that this damage to the propeller was such as to render it—and accordingly the aircraft—unairworthy[1] before take-off at Colorado Springs, and that the flight should not have been undertaken and the fact of damage immediately noted in the log.

On the record before him, which included Copsey's testimony, the FAA Administrator entered an order suspending Copsey's pilot certificate for sixty days.

Copsey appealed the said order to an Administrative Law Judge, who reduced the period of suspension from sixty days to fifteen days, and then waived imposition of the reduced suspension stating that Copsey had timely filed a report and that the violation was not intentional. The full Board, however, reinstated the sixty day suspension, finding that the violation of FAR § 135.65(b) (requiring the immediate entering of all mechanical irregularities arising during flight time into the aircraft maintenance log) was intentional. The Board also concluded that although Copsey may not have been aware of the damage until he inspected the propeller before his takeoff on February 23, and hence could not be held responsible for not having logged the irregularity the day before, nevertheless he should have logged it before the February 23 flight. The Board found that Copsey chose to disregard the evidence that the propeller damage caused the plane to be unairworthy, and that his takeoff was an intentional violation of FAR § 91.29(a) (prohibiting operation of an aircraft in an unairworthy condition).

■ The issues before us are whether the Agency's findings of fact are supported by substantial evidence, and whether Copsey is entitled to a waiver of any sanction by reason of having participated in the Aviation Safety Reporting Program.

Copsey is an active professional pilot, having been flying for some fifty years. He served in the Army Air Corps starting in World War II and thereafter in the Air Force and in civilian positions. He contends that he evaluated the propeller's airworthiness based on his own vast experience with damaged propellers, and concluded that the propeller was indeed airworthy. He carefully examined the craft before embarking on his flight, both visually and by performing operational tests.

Airworthiness is defined in Section 603(c) of the Federal Aviation Act (49 U.S.C.App. § 1423). The criteria are two: the plane must be 1) in conformance to the aircraft's type certificate; and 2) in condition for safe flight. The NTSB found that Copsey had disregarded evidence that the propeller damage caused the plane to be unairworthy, that his takeoff was an intentional violation of FAR § 91.29(a), that he should have logged the propeller damage when he inspected the plane before takeoff, and that he is not entitled to a reduction or a waiver of the sanction of suspension.

■ Section 304(d) of the Independent Safety Board Act, 49 U.S.C.App. § 1903(d), provides that judicial review of an NTSB order is governed by Chapter 7 of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–06. Under the APA, the reviewing court shall set aside agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. The NTSB's findings of fact are conclusive when supported by substantial evidence in the record. *See Meik v. NTSB,* 710 F.2d 584, 586 (9th Cir.1983). The agency's findings are supported by the evidence if they are a logical interpretation of the facts. They need not be the only possible reading of the evidence. *Ibid, citing Horizon Mutual Savings Bank v. Federal Savings & Loan Insurance Corp.,* 674 F.2d 1312, 1316 (9th Cir.1982).

■ In this case, four witnesses testified as to the damage to the propeller and the risk to which this subjected the plane. The repair facility to which the propeller was sent determined that the damage was beyond repair. Even assuming, in the face of this

---

**1.** The definition of "airworthy" is well-settled. It is based on section 603(c) of the Federal Aviation Act of 1958, 49 U.S.C.App. § 1423(c), and imposes a two-pronged requirement: (1) that the aircraft [including a propeller blade] conforms to its type design approved under its type certificate, and (2) that it is in condition for safe operation.

evidence, that the airworthiness of the plane in this situation was a question on which reasonable people could differ, the agency decision was certainly not arbitrary or capricious. The statutory requirement of airworthiness does not mean flyability; the fact that Copsey flew the run without incident or had had experience with damaged craft does not permit us to set aside a fully-supported agency conclusion that the plane was not airworthy, and that this was a violation of federal aviation regulations.

■ Similarly, the agency did not act arbitrarily or capriciously in determining that Copsey was not entitled to a waiver of sanction under the Aviation Safety Reporting Program. A waiver may occur on a finding by the NTSB that "[t]he violation was inadvertent and not deliberate[.]" FAA Advisory Guideline Circular 00–46C, at 9.c. Since the NTSB was fully justified in finding that Copsey's decision to fly the plane with the damaged propeller (i.e. the violation) was deliberate and not inadvertent, its determination not to grant a waiver of sanction must be affirmed, notwithstanding Copsey's filing of a Safety Report with NASA following the flight.

Given the foregoing, the NTSB order of suspension of appellant Copsey is affirmed.