**Jerry GOETZ, d/b/a Jerry Goetz and Sons, Plaintiff,**

**v.**

**UNITED STATES of America; United States Department of Agriculture, Dan Glickman, Individually and as The Secretary of the United States Department of Agriculture; and The Acting Administrator of the Agricultural Marketing Service, United States Department of Agriculture, Defendants.**

**No. 98–1155–JTM.**

United States District Court, D. Kansas.

May 23, 2000.

See also 149 F.3d 1131.

Clarence L. King, Jr., Hampton & Royce, L.C., Salina, KS, David Klaassen, Marquette, KS, for plaintiff.

Robin Barkett Moore, Office of United States Attorney, Wichita, KS, Thomas W. Millet, Frank W. Hunger, U.S. Dept. of Justice, Civil Division, Washington, DC, Felicia L. Chambers, U.S. Dept. of Justice, Washington, DC, for defendants.

### MEMORANDUM AND ORDER

MARTEN, District Judge.

Plaintiff Jerry Goetz brings this appeal pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 551, et seq. Under the Beef Promotion and Research Act ("BPA"), the Secretary of Agriculture ("Secretary") has ordered Goetz to pay assessments, late charges and a civil penalty. Goetz filed a separate civil rights action challenging the constitutionality of the Secretary's decision, which has been separately terminated in the Secretary's favor. The present action involves the Secretary's imposition of civil penalties against Goetz.

## I. Factual Background

Goetz has been in the cattle buying business in Kansas since 1949. He does some farming and does his cattle buying and selling as the owner and operator of Jerry Goetz and Sons. He visits a different sale barn each day, where he buys and sells cattle. He keeps some cattle at his feedlot, but often promptly resells the cattle he purchases. Goetz buys up to 200 cattle per day.

In the BPA, Congress declared it to be "in the public interest to authorize the establishment ... of an orderly procedure for financing ... and carrying out a coordinated program of promotion and research designed to strengthen the beef industry's position in the marketplace and to maintain and expand domestic and foreign markets and uses for beef and beef

products." 7 U.S.C. § 2901(b). The BPA directs the Secretary to establish, by way of a Beef Promotion and Research Order, such a program and to provide for its financing "through assessments [paid by cattle producers and importers] on all cattle sold in the United States and on cattle, beef, and beef products imported into the United States." *Id.* §§ 2901(b), 2903, 2904(8)(A)–(C). The BPA specifies the required terms and conditions of any such order, *id.* § 2904, and empowers the Secretary to include any terms and conditions necessary to effectuate an order's provisions. *Id.* § 2904(12).

The Beef Research and Promotion Order ("Beef Promotion Order"), 7 C.F.R. Part 1260, Subpart A, promulgated pursuant to notice and comment, establishes the Beef Promotion and Research Board ("Board") and the Beef Promotion Operation Committee ("Committee"), both comprised of private parties, to administer the Beef Promotion Order under the oversight of the Secretary. *Id.* §§ 2904(1)–(7); 7 C.F.R. §§ 1260.141, 1260.161.

The BPA requires cattle producers in the United States to pay a $1.00 per head assessment on cattle sold in this country.[1] 7 U.S.C. §§ 2904(8)(A), (C); 7 C.F.R. §§ 1260.172(a)(1), 1260.310. Each person making payment to a cattle producer for cattle is designated as a "collecting person" under the BPA and Beef Promotion Order and is required to collect per-head assessments and remit them to a qualified state beef council in the state in which the collecting person resides or, if there is no qualified state beef council within such state, to the Board. 7 U.S.C. § 2904(8)(A); 7 C.F.R. §§ 1260.311(a), 1260.312(c). The assessment, deducted from the money the purchaser pays to the seller, is commonly referred to as a "checkoff." Each collecting person must report to the Board specified information for each calendar month at the time assessments are remitted, 7 U.S.C. § 2904(11); 7 C.F.R. §§ 1260.201, 1260.312(a)–(c), and must maintain and make available for inspection by the Secretary the records necessary to verify the required reports. 7 U.S.C. § 2904(11); 7 C.F.R. § 1260.202.

The Secretary is authorized to conduct investigations and to issue subpoenas to determine whether any person subject to the BPA has engaged in or is about to engage in any act that constitutes or will constitute a violation of the BPA, the Beef Promotion Order or implementing rules and regulations. 7 U.S.C. § 2909. The Secretary, after providing an opportunity for an administrative hearing, may issue an order to restrain or prevent a person from violating the Beef Promotion Order and may assess a civil penalty of up to $5,000 for violation of the BPA and Beef Promotion Order. *Id.* § 2908(a). Alternatively, or in addition, the Secretary may request that the Attorney General initiate a civil action to enforce, and to restrain a person from violating, any order or regulation promulgated by the Secretary under the BPA. *Id.* §§ 2908(b), (c).

Goetz allegedly failed to remit assessments as the "collecting person" in transactions involving over 24,000 cattle. Goetz's alleged failure to remit assessments was first brought to his attention in a letter dated June 1, 1987 from the Kansas Beef Council. In February and June 1992, the Kansas Beef Council again sent Goetz letters concerning his alleged failure to comply with the Beef Promotion Order.

More facts will be discussed below as they become relevant to the court's analysis.

## II. Procedural History

By filing a complaint on October 29, 1993, the Acting Administrator of the Agricultural Marketing Service, United

---

1. The collection of assessment provisions of the Beef Promotion Order became effective October 1, 1986.

States Department of Agriculture ("Administrator"), instituted this proceeding under the BPA (7 U.S.C. §§ 2901–2911); the Beef Promotion Order (7 C.F.R. §§ 1260.101–.217); the Rules and Regulations (7 C.F.R. §§ 1260.301–.316) ("Beef Promotion Regulations"); and the Rules of Practice Governing Formal Adjudicatory Proceedings Instituted by the Secretary Under Various Statutes (7 C.F.R. §§ 1.130–.151) ("Rules of Practice").

The complaint alleged that Jerry Goetz, d/b/a Jerry Goetz and Sons ("Goetz"): (1) willfully violated section 1260.201 of the Beef Promotion Order (7 C.F.R. § 1260.201) and section 1260.312 of the Beef Promotion Regulations (7 C.F.R. § 1260.312) by failing to submit required reports; (2) willfully violated section 1260.201 of the Beef Promotion Order (7 C.F.R. § 1260.201) and section 1260.312 of the Beef Promotion Regulations (7 C.F.R. § 1260.312) by failing to submit necessary information in required reports; and (3) willfully violated section 1260.172 of the Beef Promotion Order (7 C.F.R. § 1260.172) and sections 1260.311 and 1260.312 of the Beef Promotion Regulations (7 C.F.R. §§ 1260.311, .312) by failing to remit the assessments due for the purchase and sale of cattle. The Administrator sought the issuance of an order or orders as authorized under the BPA, including an order requiring Goetz to cease and desist from violating the Beef Promotion Order and Beef Promotion Regulations and assessing civil penalties against Goetz in accordance with section 9 of the BPA (7 U.S.C. § 2908). On December 10, 1993, Goetz filed an answer denying the material allegations of the complaint and contending that the BPA, the Beef Promotion Order, and the Beef Promotion Regulations are unconstitutional, unauthorized, unreasonable, arbitrary, void and unenforceable.

On August 2, 1994, Goetz filed an action in the United States District Court for the District of Kansas challenging the constitutionality of the BPA and seeking a temporary restraining order to prevent a hearing from being held in the administrative proceeding. The court issued an order requiring an audit by the accounting firm of Wendling, Noe, Nelson & Johnson of Topeka, Kansas of Goetz's books and records pertaining to his raising, buying, selling, and trading of cattle and Goetz's collection of monies, if any, under the BPA and enjoined the administrative proceeding pending the completion of the audit. The accounting firm completed the audit on November 23, 1994,[2] and the court issued a decision on February 28, 1996, rejecting each of Goetz's constitutional challenges to the BPA and set aside prior orders which enjoined and stayed the administrative proceeding.[3] The Tenth Circuit affirmed this decision and the Supreme Court denied Goetz's petition for certiorari. *See Goetz v. Glickman*, 920 F.Supp. 1173 (D.Kan.1996), *aff'd*, 149 F.3d 1131 (10th Cir.1998), *cert. denied*, 525 U.S. 1102, 119 S.Ct. 867, 142 L.Ed.2d 769 (1999).

---

**2.** Darrell D. Loyd conducted the audit and submitted a report entitled, "Kansas Beef Council Compliance Report for Jerome (Jerry) Goetz October 1, 1986 Through June 30, 1994" ("Compliance Report"). Loyd examined Goetz's purchase invoices, sale invoices, canceled checks, deposit slips, and non-producer status forms to determine the head count for cattle that Goetz purchased and for which he should have collected and remitted assessments. Loyd estimated the number of cattle involved in the transactions for October 1, 1986 to December 31, 1989, a period for which Goetz no longer had records, by using the average sales for the period January 1, 1990 to June 30, 1994, a period for which Goetz had records. Loyd estimated in the Compliance Report that Goetz had failed to remit assessments in transactions involving 24,672 head of cattle between October 1, 1986 through June 30, 1994. He determined that Goetz owed $24,672 in assessments and a late payment charge of $51,847.48.

**3.** The court followed the Third Circuit's decision in *United States v. Frame*, 885 F.2d 1119 (3d Cir.1989), *cert. denied*, 493 U.S. 1094, 110 S.Ct. 1168, 107 L.Ed.2d 1070 (1990), which rejected a virtually identical challenge to the BPA. *Goetz*, 920 F.Supp. at 1178.

On September 25 and 26, 1996, Administrative Law Judge James W. Hunt ("ALJ") conducted a hearing in Wichita, Kansas. On February 26, 1997, he filed a decision and order, which: (1) concluded that Goetz failed to collect and remit assessments to a State Cattlemen's Beef Promotion and Research Board for 22,118 cattle during the period October 1, 1986 through June 30, 1994 in violation of section 1260.172 of the Beef Promotion Order (7 C.F.R. § 1260.172) and sections 1260.311 and .312 of the Beef Promotion Regulations (7 C.F.R. §§ 1260.311, .312); (2) ordered Goetz to cease and desist from violating the BPA, the Beef Promotion Order, and the Beef Promotion Regulations; (3) assessed a civil penalty of $46,624 against Goetz; and (4) ordered Goetz to pay past-due assessments and penalties to the Kansas Beef Council in the amount of $68,742.

Both Goetz and the Administrator appealed the ALJ's decision and order to the Judicial Officer ("JO") to whom the Secretary has delegated authority to act as the final decision-maker in the Department's adjudicatory proceedings subject to 5 U.S.C. §§ 556 and 557. On November 3, 1997, the JO issued a decision and order, which: (1) concluded that Goetz willfully violated section 1260.172 of the Beef Promotion Order and sections 1260.311 and 1260.312 of the Beef Promotion Regulations (7 C.F.R. §§ 1260.172, .311, .312) by failing to collect and remit assessments to a qualified state beef council for 21,516 cattle during the period October 1, 1986 through June 30, 1994; (2) concluded that Goetz willfully violated section 1260.175 of the Beef Promotion Order (7 C.F.R. § 1260.175) by failing to pay late payment charges for assessments that Goetz failed to remit to a qualified state beef council

during the period October 1, 1986 through June 30, 1994; (3) concluded that Goetz willfully violated section 1260.201 of the Beef Promotion Order and section 1260.312 of the Beef Promotion Regulations (7 C.F.R. §§ 1260.201, .312) by failing to transmit monthly reports of assessments to the Kansas Beef Council during the period October 1, 1986 through June 30, 1994; (4) ordered Goetz to cease and desist from violating the BPA, the Beef Promotion Order, and the Beef Promotion Regulations; (5) assessed Goetz a civil penalty of $69,244.51;[4] and (6) ordered Goetz to pay past-due assessments and late payment charges in the amount of $66,577 to the Kansas Beef Council.

Goetz and the Administrator both filed motions for reconsideration of the JO's decision and order. On April 3, 1998, the JO issued a second decision and order which denied Goetz's motion for reconsideration and denied in part and granted in part the Administrator's motion for reconsideration. In his second decision and order, the JO (1) ordered Goetz to cease and desist from violating the BPA, the Beef Promotion Order, and the Beef Promotion Regulations; (2) assessed a civil penalty of $69,804.49;[5] and (3) ordered Goetz to pay past-due assessments and late payment charges in the amount of $66,913.[6]

Goetz now seeks judicial review of the JO's final decision pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 et seq. The court has been asked to resolve the following six issues on appeal: (1) whether there was sufficient evidence for the JO to find Goetz liable for past-due assessments, late payment charges, and civil penalties in the amount of $71,788.89 for the period of October 1, 1986 through December 31, 1989; (2)

4. Based on the Administrator's suggestion, the JO assessed Goetz a civil penalty of $3.2182798 per violation for a total penalty of $69,244.51.

5. The JO found that Goetz should have collected and remitted assessments on an additional 174 cattle. Therefore, this amount rep-

resents the adjustment from his prior order assessing the civil penalty (174 × $3.2182798).

6. This amount reflects the amount of past-due assessments and late charges after the JO made the adjustment for the additional 174 cattle.

whether the Collection–Compliance Reference Guide establishes a three-year limitation after each cattle transaction on the collection of assessments, late payment charges, and civil penalties thereon under the BPA; (3) whether Goetz produced sufficient evidence to show he should not be liable for past-due assessments, late payment charges, or civil penalties on any cattle he sold at sale barns; (4) whether Goetz produced sufficient evidence to show he should not be liable for any past-due assessments, late payment charges, or civil penalties on any cattle purchases listed on page 29 of exhibit CX–18; (5) whether the Administrator produced sufficient evidence to show Goetz liable as a collecting person for the collection of the assessment in private treaty sales; and (6) whether the JO misinterpreted and misapplied 7 U.S.C. § 2908(a)(2) when he assessed civil penalties against Goetz in the amount of $69,804.49.

## III. Standard of Review

■■■ A person who has suffered a legal wrong because of an agency action, or has been adversely affected or aggrieved by an agency action within the meaning of a relevant statute, is entitled to judicial review thereof under Section 702 of the APA. *Western Shoshone Business Council v. Babbitt,* 1 F.3d 1052, 1055 (10th Cir. 1993). This court's review of the Secretary's decision is governed by Section 706 of the APA. Under the APA, the court must afford considerable deference to the agency's findings and set aside the decision only if it was " 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.' " *Bryan v. Office of Personnel Management,* 165 F.3d 1315, 1319 (10th Cir.1999) (citing 5 U.S.C. § 706(2)(A)). Furthermore, the court must set aside any of the Secretary's findings that are not supported by substantial evidence. 5 U.S.C. § 706(2)(E); *see also Olenhouse v. Commodity Credit Corp.,* 42 F.3d 1560, 1575 n. 25 (10th Cir.1994) (noting scope of review provisions of § 706(2) are cumulative; "The arbitrary or capri-

cious standard of § 706(2)(A) is thus a catch-all, picking up administrative conduct not covered by the more specific paragraphs."). "Review under § 706(2)(A) is narrow, and the agency need only demonstrate that it considered relevant factors and alternatives after a full ventilation of issues and that the choice it made was reasonably based on that consideration." *Mount Evans Co. v. Madigan,* 14 F.3d 1444, 1453 (10th Cir.1994); *see also Mountain Side Mobile Estates Partnership v. Secretary of Hous. and Urban Dev.,* 56 F.3d 1243, 1250 (10th Cir.1995) ("When we review an agency's decision under the arbitrary, capricious or abuse of discretion standard, 'our review is narrow and deferential; we must uphold the agency's action if it has articulated a rational basis for the decision and has considered relevant factors.' ") (citation omitted). Normally, an agency's action is set aside as arbitrary and capricious only "if the agency has relied on factors which Congress has not intended for it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Rapp v. United States Dep't of Treasury,* 52 F.3d 1510, 1515 (10th Cir.1995).

■■■ An agency's findings of fact are conclusive when they are supported by substantial evidence in the record. *Copsey v. National Transp. Safety Bd.,* 993 F.2d 736, 738 (10th Cir.1993); *see also Rapp,* 52 F.3d at 1515 ("Evidence is substantial under the APA if it is enough to justify, if the trial were to a jury, refusal to direct a verdict on a factual conclusion."). "Under the substantial evidence test, [the court] consider[s] conflicts in the record and specifically define[s] those facts which support the agency's decision." *Rapp,* 52 F.3d at 1515. An agency's findings are supported by the evidence if they are a logical interpretation of the facts; they need not be the only possible reading of the evidence.

*Copsey,* 993 F.2d at 738. "While it is permissible for a court to engage in substantial inquiry into the facts, absent clear error, it must be wary to substitute its judgment for that of an expert agency." *Foust v. Lujan,* 942 F.2d 712, 719–20 (10th Cir.1991). The court's function is not to weigh the evidence or to evaluate witnesses' credibility. *Hill v. National Transp. Safety Bd.,* 886 F.2d 1275, 1278 (10th Cir.1989). As long as there is substantial evidence to support the Secretary's findings, this court will not reverse, even though it might reach a different result if it were making the initial decision on the matter. *Long v. Board of Governors of the Fed. Reserve Sys.,* 117 F.3d 1145, 1151 (10th Cir.1997).

## IV. Analysis

### A. Past–Due Assessments, Late Payment Charges and Civil Penalties for October 1, 1986 through December 31, 1989

On advice from his accountant, Goetz claims he never maintained business records for more than three years due to a shortage of space. According to Goetz, he began this practice many years before the Administrator brought proceedings against him. As a result of this business practice, he did not maintain any records relevant to the BPA for any cattle transactions prior to January 1, 1990. Goetz contends that without records pertaining to cattle transactions prior to January 1, 1990, no evidence exists to show whether he is liable for any assessments or penalties under the BPA for any period prior to January 1, 1990.

The Administrator argues that the JO's determinations regarding pre–1990 transactions are supported by substantial evidence. Based on the uncontroverted testimony of Bryce Schumann, Coordinator of Industry Relations for the Kansas Beef Council, Goetz did not transmit reports of assessments to the Kansas Beef Council as required by 7 C.F.R. §§ 1260.201 and .312. The Administrator contends this evidence is relevant to prove Goetz did not comply with the BPA prior to 1990. Because Goetz did not submit reports to the Kansas Beef Council, there are no records showing he paid the assessments. Based on this evidence, the Administrator argues that a reasonable mind could conclude, as did the ALJ and the JO, that Goetz had not paid the assessments during the period for which he had no records and for which he did not submit reports to the Kansas Beef Council.

The Administrator argues that Loyd's (the CPA) estimates are the best evidence of the amount Goetz owes for assessments due for the period October 1, 1986 through December 31, 1989, especially since Goetz has not offered any evidence of his own. To determine the amount Goetz owes for that period, Loyd averaged records by year and month based on the data he did have to determine the range of transactions for years for which Goetz provided no data. Goetz does not argue that the number and types of transactions he made during the period for which he maintained records are completely unrepresentative of the number and types of transactions he made during the period for which he failed to keep records.

Given the applicable standard of review, the court concludes that the JO's decision must be upheld. Schumann testified that Goetz had failed to submit the required reports during this period. Because he did not submit the required reports, a rational fact finder could reasonably conclude Goetz failed to remit the assessments that were due. It is also reasonable to conclude Goetz failed to pay the assessments for this period, considering he failed to submit the reports and assessments for the period in which he did have records, *i.e.,* after January 1, 1990. Why would he pay the assessments from October 1, 1986 through December 31, 1989 and then stop paying them on January 1, 1990? In addition, the Kansas Beef Council sent him a letter on June 1, 1987,

advising him that he needed to collect and remit the assessments. If he was submitting the reports and paying the assessments, there would have been no need for this letter. The court finds that the accountant's method of estimation is a fair way to determine an accurate estimate of the amount due for the period in which Goetz has no records. The court finds that Goetz's arguments are without merit, and are hereby rejected.

## B. Collection/Compliance Guide

Goetz next argues that the Collection/Compliance Guide, which was prepared by the compliance manager of the Board and provided by the Board to all qualified state beef councils, establishes a three-year limitation after each cattle transaction on the collection of assessments, late payment charges and civil penalties. The Collection/Compliance Guide states that collecting persons must "[m]aintain records and documentation pertaining to the checkoff for at least three years following each transaction." Record Tab 81, exh. RX–168. Goetz claims that "[o]n their face, the three-year-record-keeping provisions contained in the Collection/Compliance Guide establish a three-year statute of limitations from and after each transaction for the collection of any assessments related thereto, and any late payment charges and civil penalties thereon." Plf.Mem. at 14.

Monte Reese, Executive Director of the Board, testified at the hearing before the ALJ. During his testimony, he stated the purpose of the guide was to insure consistent collection procedures among the state beef councils. According to him, the guide is not part of the order or the rules and regulations. "It is merely a guide to assist in consistency." Record Tab 79, p. 240; see also id. at 255 ("[I]t is a guide. It is not a regulation. It is a collection compliance reference guide and it was intended as nothing more nor less than a guide."). "It is sent to State Beef Councils to assist them in insuring compliance with the collection requirements." Id.

The provisions on which Goetz relies to establish a three-year statute of limitations pertain to the maintenance of records only. Neither the BPA, the order, nor the Collection/ Compliance Guide provisions set forth a statute of limitations on collecting assessments and late charges that have not been properly submitted.

Goetz further argues that requiring him to maintain records for more than three years violates his equal protection rights. However, as the JO pointed out, there is no evidence that suggests Goetz was required to maintain records for a longer period than other similarly situated persons or that his burden with respect to his defense is any greater than it would have been for others charged with the same violations.

■■ The court must reject Goetz's arguments on this issue. The Collection/Compliance Guide is clearly a document to assist state beef councils in their collection efforts. It is not a rule or regulation that is binding on the Secretary's enforcement proceedings. Further, the Guide merely pertains to how long collecting persons should maintain records ("for at least three years"). It says nothing about limiting the time in which the Secretary can collect assessments and late charges.

## C. Sale Barn Transactions

■■ Goetz argues he produced sufficient evidence in the administrative proceedings to show he should not be liable for any past-due assessments, late payment charges, or civil penalties on any cattle he sold at any sale barns because with regard to those transactions he was not a producer within the meaning of the regulations. As part of his business, Goetz engages in an operation known as cattle "swapping." His cattle-swapping operation consists of buying cattle at one sale barn and directly moving them to another

sale barn where they are sold. According to Goetz, the cattle involved in his swapping operation are never brought to his feedlot; they are immediately moved to the next sale barn and resold within ten days.

Individuals may obtain non-producer status for certain transactions:

(a) The assessment levied on each head of cattle sold shall not apply to cattle owned by a person . . .

(2) If the person:

(i) Certifies that the person acquired ownership of cattle to facilitate the transfer of ownership of such cattle from the seller to a third party,

(ii) Establishes that such cattle were resold not later than 10 days from the date on which the person acquired ownership; and

(iii) Certifies that the assessment levied upon the person from whom the person purchased the cattle, if an assessment was due, had been collected and has been remitted, or will be remitted in a timely fashion.

7 C.F.R. § 1260.314(a)(2); see also 7 C.F.R. § 1260.116(b) (describing persons who are not considered producers).

The JO found Goetz was liable for past-due assessments, late payment charges, and civil penalties on certain cattle sold at sale barns because he failed to show they were sold within ten days. Goetz claims that the auditor erred in finding he held the "swapping" cattle for more than ten days and that Ms. Goetz's record keeping caused this error. The sale invoices pertaining to the transactions in question indicate the cattle were resold after the ten-day period. Ms. Goetz claims the date on some of the sale invoices was the date she prepared the invoices, not the dates on which the cattle were resold. Although Ms. Goetz claimed she sometimes inadvertently used an incorrect sale date, she did not testify that all sale invoices had a wrong sale date.

Goetz claims that the feedlot records indicate the resales occurred earlier than the dates appearing on the invoices. However, Goetz did not offer the testimony of anyone who prepared the feedlot records to explain the information on them or how the actual dates that cattle were bought or sold can be determined from the feedlot records. Furthermore, Goetz testified that he sometimes kept cattle for more than thirty days after buying them. The auditor relied on Goetz's sale invoices rather than the feedlot records to determine resale dates because he found the feedlot records "contained .conflicting information and that it is the practice of auditors to rely on sale invoices to determine when title to cattle changes." JO First Dec. and Order at 23.

The JO found that the dates appearing on the sale invoices were the presumptive resale dates in the absence of evidence showing that such dates were incorrect. Therefore, Goetz failed to establish he resold the cattle within ten days. The court finds that the sale invoices would be the best evidence to determine when the sales occurred. Based on those, it appears Goetz held some of the cattle for more than ten days, thus disqualifying him from the exemption found in Section 1260.314(a)(2).

**D. Transactions Involving Certification of Non–Producer Status Forms**

█ This argument is an extension of the preceding argument because the transactions for which Goetz complains also occurred at sale barns. However, the transactions he is referring to specifically are those occurring at Record Tab 80, page 29 of exhibit CX–18. For each of the purchases listed, there was a Certification of Non–Producer Status form signed by Goetz on which the box indicating "I collected $1.00 per head" was checked. Goetz claims he did not collect the assessment on the cattle purchases listed, that he signed the Certification of Non–Producer Status forms before they had been com-

pleted, and that someone at the sale barns must have checked the wrong box when they were completing the forms.

Goetz supports his position with four arguments. First, he argues that the Administrator produced several other Certification of Non–Producer Status forms he signed, none of which had the boxes checked. This, according to Goetz, suggests that he was signing the forms while they were blank and "the sale barns were completing them but sometimes failed to complete them." Pl.Mem. at 18. The court concludes, however, that this argument weighs against Goetz, who is effectively saying the sale barns failed to complete the forms when they did not check the boxes. But, on the other hand, he argues it was a mistake when the boxes were checked.

Second, Goetz claims there is a noticeable difference between his signature and the handwriting which completed the remainder of the forms. These forms contain little writing. On several of them, it appears that Goetz may very well have completed them. However, it is difficult to determine because of the lack of writing on the forms.

Third, Goetz claims the purchases listed on page 29 of exhibit CX–18 were part of his cattle "swapping" operations. As such, he was not the collecting person because the purchases were made at sale barns. As discussed above, Goetz was unable to show these cattle were resold within ten days of purchasing them.

Finally, Goetz argues the sales and purchases invoices relating to several transactions (listed on page 29 of exhibit CX–18) indicate that there were no deductions withheld by Goetz for the checkoffs. *See* Pl.Mem. at 19–20.

In his first decision and order, the JO found that since Goetz resold the cattle within ten days, he was not required to remit an assessment on the cattle. On reconsideration, however, the JO reversed his decision, finding that all three provisions of 7 C.F.R. § 1260.314(a)(2) had not been met. Section 1260.314(a)(2) provides that an assessment is not required when three conditions are met: (1) the person certifies that he facilitated the transfer of ownership to a third party; (2) the person establishes that the cattle were resold within ten days; and (3) the person certifies that the assessment has been collected and remitted. 7 C.F.R. § 1260.314(a)(2). The Administrator claims Goetz failed to comply with the third element.

On reconsideration, the JO dedicated about five pages to this issue. *See* JO's Recon. Order at 11–16. He concluded that the Certification of Non–Producer Status forms contained Goetz's signature. They also had the box checked that certified Goetz had collected the $1.00 assessments. Because it appears Goetz collected the assessments, he was required to turn them over to the Kansas Beef Council. The JO rejected Goetz's argument that he signed the forms before the boxes were checked.

The JO was in a superior position to assess Goetz's credibility, and the court will affirm on this issue as well. The forms that contain Goetz's signature with the box checked provide sufficient evidence to establish that Goetz did collect the assessments but failed to remit them to the Kansas Beef Council.

## E. Private Treaty Sales[7]

▇ Goetz argues that many of his cattle transactions were "private treaty sales," which are sales between producers. In such transactions, Goetz argues, both the seller and the buyer are liable for the

7. The Administrator argues the court should not consider this issue because Goetz failed to raise it in his motion for reconsideration. Goetz did raise this issue in his initial appeal of the ALJ's decision to the JO. The Adminis-

trator would have a plausible argument if Goetz had raised this issue for the first time in the motion to reconsider, but since he raised it initially, the court can and will consider it.

collection and remittance of the assessment.[8] He claims that the Administrator, by attempting to collect assessments from him, may be trying to collect twice for the same transactions since the Administrator has not proven that the cattle sellers have not paid the assessments. The ALJ found that the Administrator demonstrated that Goetz was the "collecting person" as defined by Section 1260.106 of the Regulations because he was "the person making payment to a producer" in these transactions. ALJ Dec. and Order pp. 6–7. Therefore, the Administrator established a prima facie case that Goetz either collected or should have collected assessments involving transactions in which he was the "collecting person" and that he did not remit such assessments. The JO agreed with the ALJ and found that Goetz was the "collecting person" in the transactions involving the private treaty sales. The JO found that Goetz could have rebutted the Administrator's prima facie case by demonstrating he was not responsible for the assessments in the private treaty sales by showing that the assessments had been paid by the producer/seller.

■ Once again, the court finds that the JO's decision should be upheld. Section 1260.106 defines a "collecting person" as "the person making payment to a producer for cattle, or any other person who is responsible for collecting and remitting an assessment pursuant to the Act, the order and regulations prescribed by the Board and approved by the Secretary." 7 C.F.R. § 1260.106. Although Goetz claims he was a producer buying cattle from an

other producer, the fact remains he was the one making payment to the producer, that is, he was the buyer, not the seller.

### F. Assessment of Civil Penalties in Excess of $5,000

Section 2908(a)(2) of the BPA states: "If the Secretary believes that the administration and enforcement of this chapter or an order would be adequately served by such procedure, following an opportunity for an administrative hearing on the record, the Secretary may—assess a civil penalty of not more than $5,000 for violation of such order." 7 U.S.C. § 2908(a)(2). Pursuant to this section, the JO ordered Goetz to pay a civil penalty in the amount of $69,804.49, which represents $3.2182798 for each of the 21,690 violations.

Goetz feels the JO misinterpreted and misapplied 7 U.S.C. § 2908(a)(2) when he assessed the civil penalty against him. He claims the Administrator asked for the civil penalty at the end of the administrative hearings—i.e., not during his case in chief but rather during rebuttal. Goetz contends 7 U.S.C. § 2908(a)(2) requires "that in order to assess such a civil penalty, an administrative hearing on the record about that very assessment must be afforded to the person against whom such assessment is intended." Pl.Mem. at 23. Goetz also claims the JO lacked statutory authority to assess a civil penalty of over $5,000 at one time for violation of the Beef Promotion Order. He claims 7 U.S.C. § 2908(a)(2) clearly only allows the imposition of one penalty, not to exceed $5,000, after any administrative hearing. He fur-

8. Goetz seems to base his argument on 7 C.F.R. § 1260.310(c), which provides: "Failure of the collecting person to collect the assessment on each head of cattle sold as designated in § 1260.311 shall not relieve the producer of his obligation to pay the assessment to the appropriate qualified State beef council or the Cattlemen's board as required in § 1260.312." He seems to suggest that because he did not pay the assessment, the producer should have. However, it is very possible Goetz collected the assessment but failed to remit it. If that was the case, the

producer would have assumed the assessments had been paid. In addition, even if both seller and purchaser were ultimately liable, it would make more sense to go after the purchaser first if no payment had been made because the purchaser seems to have primary responsibility for remitting the assessment as the "collecting person." It appears there was no evidence submitted to show the seller had in fact paid the assessments. Therefore, the Administrator was not getting a double recovery as Goetz suggests.

ther argues that the late charge is already a penalty and that making him pay an additional $69,804.49 would break him financially and destroy his business. Finally, he argues that the evidence does not support the imposition of a civil penalty.

The Administrator first argues that the plain language of the statute controls and that the interpretation of a statute by the agency charged with its administration is entitled to great deference. The Administrator contends that the plain language of the statute permits a civil penalty when the Beef Production Order is violated. According to the Administrator, the Beef Production Order is violated every time a person subject to it fails to comply with its provisions. Therefore, the JO could have assessed a penalty of up to $5,000 for each time Goetz failed to remit assessments (21,690) and for each time he failed to transmit reports of assessments (93), which could have resulted in a penalty of up to $108,915,000. Finally, the Administrator argues that the evidence supported the imposition of the civil penalty.

■■■ The court will affirm the imposition of the civil penalty. The Tenth Circuit has stated the following about statutory interpretation:

In interpreting a statute, the starting point is the statutory language. *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). "Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Id.* "In other words, '[u]nless the statutory language is ambiguous or would lead to absurd results, the plain meaning of the statute must control.'" *United States v. Koch Indus., Inc.,* 971 F.2d 548, 552 (10th Cir.1992) (quoting *United States ex rel. Williams v. NEC Corp.*, 931 F.2d 1493, 1498 (11th Cir. 1991)), *cert. denied,* 507 U.S. 951, 113 S.Ct. 1364, 122 L.Ed.2d 742 (1993).

. . . .

Where the plain language of a statute is ambiguous and Congress has not spoken on the issue, we must give considerable deference to an agency's interpretation of a statute it is charged with administering. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 2782–83, 81 L.Ed.2d 694 (1984). We must sustain the agency's construction of the statute as long as its construction is reasonable. *Id.* at 845, 104 S.Ct. at 2783.

*Long v. Board of Governors of the Fed. Reserve Sys.*, 117 F.3d 1145, 1157 (10th Cir.1997); *see also Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965) ("The interpretation of a statute by the agency charged with its administration generally is entitled to great deference.")

■■■ The plain language of the statute supports the JO's determination. The statute provides that the Secretary may impose a civil penalty not to exceed $5,000 for "violation of such order." Every time Goetz failed to collect and remit assessments and failed to provide monthly reports, he violated the order. Other courts agree with this interpretation. *See Frame*, 885 F.2d at 1124 ("The Secretary may, after an administrative hearing, issue an order to restrain or prevent a person from violating the Beef Order, and assess a civil penalty of up to $5,000 for *a* violation already committed.") (emphasis added); *Goetz*, 920 F.Supp. at 1177 ("After an administrative hearing, the Secretary may issue an order restraining violations and may impose a civil penalty of up to $5,000 for *each* violation of the Act and the Order.") (emphasis added). Even if the court were to find the language of the statute ambiguous, it would conclude that the JO's interpretation is not unreasonable.

■■■ Goetz's argument that the late charge is a sufficient penalty is without merit. If that were the case, why does 7 U.S.C. § 2908(a)(2) even exist? As the Administrator points out, the purpose of the late charge is to reimburse the Board

for the time value of assessments not timely remitted and the purpose of the civil penalty is to deter those who violate any order issued under the BPA.

In sum, the court cannot find that the JO acted arbitrarily or capriciously in his decisions, and his findings are clearly supported by substantial evidence. Therefore, there are no grounds for reversal in this case.

The present matter has been extensively briefed. Further, given the careful review given to the extensive arguments and evidence submitted by the parties, the court does not encourage the filing of motions for reconsideration. Accordingly, any such motion and accompanying memoranda may not exceed ten double-spaced pages in length, including supporting arguments and authorities, regardless of the number of points raised. Any response shall also be limited to five pages. No replies may be filed.

IT IS ACCORDINGLY ORDERED this 23d day of May, 2000, that the decision of the Secretary is affirmed in all respects.